MARIA E. MILLS, EXECUTRIX (ESTATE OF
CLARENCE ISRAEL MILLS) *v.* THE
SOLUTION, LLC, ET AL.
(AC 32792)

Gruendel, Lavine and Alvord, Js.

Argued June 1—officially released September 11, 2012

*Marie A. Casper,* with whom were *Jeremy C. Virgil* and, on the brief, *Jeffrey M. Cooper,* for the appellant (plaintiff).

*Karen L. Dowd,* with whom were *Kenneth J. Bartschi* and, on the brief, *Christopher M. Vossler,* for the appellees (defendant 5 Star Amusement Company, Inc., et al.).

*Betsy A. Edwards,* associate city attorney, for the appellees (defendant city of Bridgeport et al.).

*Opinion*

GRUENDEL, J. The plaintiff, Maria E. Mills, executrix of the estate of Clarence Israel Mills (decedent), appeals

from the summary judgments rendered by the trial court in favor of the defendants the city of Bridgeport (city); Philip C. Handy, the director of the city's department of parks and recreation; Anthony Armeno, the city's acting chief of police at the time of the subject incident; 5 Star Amusement Company, Inc.; Robert E. Coleman, Jr.; and Linda M. Coleman.[1] She claims that the court improperly concluded that no genuine issues of material fact existed as to (1) whether the city, Handy and Armeno (municipal defendants)[2] had qualified immunity because (a) General Statutes § 7-284 imposes a ministerial duty to provide police protection and (b) the city was engaged in a proprietary activity, and (2) whether 5 Star lacked control of the premises such that it did not owe her decedent a duty. We affirm the judgments of the trial court.

We set forth the following facts as gleaned from the pleadings, affidavits and other proof submitted, viewed in a light most favorable to the plaintiff. See *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009). The Solution, LLC, (Solution)[3] was the general organizer and operator of the Midway carnival held annually at Seaside Park in Bridgeport (carnival). 5 Star was the vendor that provided the rides, food and amusement activities for the carnival.

Thomas Kelly received a permit from the city's police department to hold the carnival from June 20, 2005 through July 5, 2005. The organization named on the

---

[1] Robert E. Coleman, Jr., and Linda M. Coleman are members of 5 Star Amusement Company, Inc. 5 Star Amusement Company, Inc., Robert E. Coleman, Jr., and Linda M. Coleman will be referred to collectively as 5 Star and individually by name when appropriate.

[2] The plaintiff named additional municipal defendants, but they are not parties to this appeal.

[3] Solution and two of its members, Thomas Kelly and Marilyn Goldstone, are defendants in this matter but not parties to this appeal. On March 10, 2010, they filed a motion for summary judgment, which was denied by the court.

permit was 5 Star. The permit required that security be provided and coordinated with the police department's outside overtime office. Those police officers were in addition to the officers already scheduled to work their regular duty shifts. The city's parks and recreation department also issued a permit for the carnival. The identity of the applicant was listed on the permit as "Five Star Amusement Inc. c/o The Solution LLC." The permit identified Kelly as the representative making the application and required that the permittee be responsible for required police coverage for the use and activities conducted under the permit as may be deemed appropriate by the city's police department.

On June 24, 2005, the decedent was fatally shot at the carnival by Lucilo Cifuentes.[4] The plaintiff's third amended complaint alleged thirteen counts against various defendants. The second count of the plaintiff's third amended complaint alleged that the injuries and damages suffered by the decedent were caused as a result of the negligence and carelessness of 5 Star. The third count alleged that the injuries and damages suffered by the decedent were caused as a result of the negligence and carelessness of Handy. The count alleged, inter alia, that Handy negligently allowed the carnival to be held without adequate security or police coverage. In count four, the plaintiff sought indemnity from the city for the negligence and carelessness of Handy. In count seven, the plaintiff alleged that the injuries and damages suffered by the decedent were caused as a result of the negligence and carelessness of Armeno. The count alleged, inter alia, that Armeno negligently failed to provide sufficient police coverage for the carnival and failed to cancel or to postpone the carnival when he knew or should have known that there would

---

[4] Cifuentes, the shooter, and other individuals alleged to have been involved in the shooting are also defendants in this matter but not parties to this appeal.

be inadequate police coverage. In count eight, the plaintiff sought indemnity from the city for the carelessness and negligence of Armeno.

On March 11, 2010, the municipal defendants filed a motion for summary judgment on counts three, four, seven and eight of the plaintiff's third amended complaint. They asserted that the plaintiff's complaint was legally insufficient because the allegations of negligence in the complaint related to discretionary acts, and the municipal defendants are therefore immune from liability pursuant to General Statutes § 52-557n. They claimed that there was no genuine issue of material fact as to whether their acts were discretionary in nature. Attached to the motion were affidavits from Armeno, Handy and James Honis, who was the deputy chief of police at the time of the incident. In her opposition to the municipal defendants' motion for summary judgment, the plaintiff asserted that § 7-284 obligated the municipal defendants to provide police protection and thus was the source of a ministerial duty.

On October 13, 2010, the court rendered summary judgment in favor of the municipal defendants. In its memorandum of decision, the court found that the plaintiff's complaint was facially insufficient, as it failed to allege that there was a policy, directive, guideline or procedure in place regarding the alleged failures of the municipal defendants. The court found that the actions of the municipal defendants on June 24, 2005, in determining how and when to deploy police officers, were discretionary in nature and not ministerial. The court also held that § 7-284 did not create a ministerial duty, as the implementation of § 7-284 requires the exercise of discretion and judgment by police officials. It further found that the plaintiff could not recover under an exception to a municipal employee's qualified immunity for discretionary acts because the decedent was not an identifiable victim subject to imminent harm and

because there was no evidence that the city derived a pecuniary benefit from providing police protection to the carnival.

5 Star likewise filed a motion for summary judgment on all claims asserted against it on March 16, 2010. It claimed that (1) it was not charged with the duty to provide police protection at the carnival, (2) it had no notice that there was likelihood that homicides would be committed, (3) the homicide in question was unforeseeable and (4) the plaintiff's claims against 5 Star are barred by the intervening intentional and criminal act of another.

On November 1, 2010, the court rendered summary judgment in favor of 5 Star. The court found that there was no evidence presented that 5 Star was the permitee, or that it owned, rented, possessed or otherwise controlled the premises where the carnival took place. Absent evidence of possession or control of the premises, the court determined that 5 Star owed no duty to the decedent as a business invitee, and the plaintiff therefore could not prevail in a negligence claim against it. This appeal followed.

Before considering the precise claims presented on appeal, we note the well established standard of review. "Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing

such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-44 and 17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Weiner* v. *Clinton,* 106 Conn. App. 379, 382–83, 942 A.2d 469 (2008).

## I

The plaintiff claims first that the court improperly held that there was no genuine issue of material fact as to whether the municipal defendants had qualified immunity for the negligence claims asserted against them by the plaintiff. Specifically, the plaintiff argues that the court improperly held that the municipal defendants were entitled to qualified governmental immunity because (1) § 7-284[5] imposes a ministerial duty to provide police protection and (2) the municipal defendants were engaged in proprietary activities. We agree with the municipal defendants that the court properly rendered summary judgment in their favor pursuant to § 52-557n because their allegedly negligent acts were

[5] General Statutes § 7-284 provides: "When police protection is necessary or required at any boxing bout or wrestling match, place of public amusement, sport contest or hockey, baseball or basketball game, or any other exhibition or contest, which is being held or is to be held in any municipality, the amount of such protection necessary shall be determined and shall be furnished by (1) the chief or superintendent of the police department in any municipality having an organized or paid police department or (2) the commanding officer of the state police troop having jurisdiction over the municipality in any municipality having a resident state trooper. Any such protection shall be paid for by the person or persons operating, conducting or promoting such game, exhibition or contest."

discretionary in nature and were not performed for a pecuniary benefit.

We begin with the general principles of municipal liability. Under § 52-557n (a) (1) (A),[6] a municipality generally is liable for the ministerial acts of its agents. Section 52-557n (a) (2) (B),[7] however, "explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Internal quotation marks omitted.) *Coe* v. *Board of Education*, 301 Conn. 112, 117, 19 A.3d 640 (2011).

As our Supreme Court has explained, "[m]unicipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for

___

[6] General Statutes § 52-557n (a) (1) (A) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[7] General Statutes § 52-557n (a) (2) (B) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

negligence arising out of their ministerial acts . . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Internal quotation marks omitted.) *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 270–71, 41 A.3d 1147 (2012).

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . If by statute or other rule of law the official's duty is clearly ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance. . . . [M]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations omitted; internal quotation marks omitted.) *Grignano* v. *Milford*, 106 Conn. App. 648, 654, 943 A.2d 507 (2008).

"There are three exceptions to discretionary act immunity. Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. . . . First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 319–20, 907 A.2d 1188 (2006).

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally

a question of fact for the fact finder . . . there are cases where it is apparent from the complaint. . . . [T]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions *necessarily* involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Grignano* v. *Milford*, supra, 106 Conn. App. 654–55.

## A

The plaintiff claims first that the court erred in finding that § 7-284 does not create a ministerial duty.[8] We disagree.

We must determine whether the court properly concluded that § 7-284 does not create a ministerial duty to furnish police protection, a question of statutory interpretation over which our review is plenary.[9] See

[8] The municipal defendants argue that any claim relating to § 7-284 is not properly before this court because it was not alleged in the plaintiff's complaint. In her opposition to the municipal defendants' motion for summary judgment, the plaintiff asserted for the first time that § 7-284 obligated the municipal defendants to provide police protection and thus was the source of a ministerial duty. It is sufficient that the plaintiff raised the source of the alleged ministerial duty in her opposition to the motion for summary judgment, and, accordingly, we review the merits of the plaintiff's claim. See *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 50–51, 881 A.2d 194 (2005) (noting that plaintiff failed to present any evidence of policy or directive in his opposition to defendants' motion for summary judgment, and, absent such evidence, holding that defendants were engaged in discretionary acts).

[9] The court considered § 7-284 as potentially falling under the second exception to discretionary act immunity, under which "liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, supra, 280

*Santiago* v. *Commissioner of Motor Vehicles*, 134 Conn. App. 668, 678, 39 A.3d 1224 (2012). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id., 678–79.

Section 7-284 provides in relevant part that "[w]hen police protection is necessary or required at any . . . place of public amusement . . . the amount of such protection necessary shall be determined and shall be furnished by . . . the chief of . . . the police department . . . ." The parties do not dispute that § 7-284 vests the chief of police with the discretion to determine whether police protection is necessary at private events and, if so, the amount of such protection. It is the plaintiff's contention, however, that once the chief of police,

Conn. 319–20. The plaintiff claims only that the court erred in concluding that § 7-284 does not impose a ministerial duty and makes no claim that the court erred in concluding that §7-284 does not provide a cause of action against the municipality for failing to enforce certain laws. We therefore only consider whether § 7-284 creates a ministerial duty.

in his or her discretion, determines that police protection is necessary, the chief of police then has a ministerial duty to furnish such police protection. The plaintiff's claim centers on the mandatory nature of the word "shall" in the phrase "the amount of such protection necessary shall be determined and *shall be furnished* by . . . the chief of . . . the police department." (Emphasis added.) General Statutes § 7-284. The plaintiff claims that, because the police department determined that police protection was necessary, it violated its ministerial duty to furnish such protection by failing to provide any police protection whatsoever to the carnival.[10] We disagree with the plaintiff that the word "shall" is sufficient to convert what is otherwise a discretionary act into a ministerial duty where the text of the statute leaves to the discretion of the police official how to perform the function and whether to perform the function at all.

Although the word "shall" can connote a mandatory command, the language of the statute, read as a whole, involves discretionary acts. See *Wiseman* v. *Armstrong*, 269 Conn. 802, 810, 850 A.2d 114 (2004) ("[a] statute is enacted as a whole and must be read as a whole rather than as separate parts or sections"). "The mere fact that a statute uses the word 'shall' in prescribing the function of a government entity or officer should not be assumed to render the function necessarily obligatory in the sense of removing the discretionary nature of the function, and it is therefore not sufficient that some statute contains mandatory language nor that the public entity or officer was under an obligation to perform a function that itself involves the exercise of discretion." 57 Am. Jur. 2d 91, Municipal, County, School, and State Tort Liability § 75 (2012).

---

[10] The plaintiff contends that whether there were police officers present at the carnival at all is a disputed issue of fact, and summary judgment was therefore inappropriate. This factual issue is not relevant to our inquiry, as we conclude that the act in question was discretionary.

Performance of the allegedly ministerial duty, furnishing police protection, necessarily involves the exercise of discretion because the statute, as well as our common law, vests police officials with the authority to determine the amount of protection necessary. See *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 179, 544 A.2d 1185 (1988).[11] Our Supreme Court recently held that "for the purposes of § 52-557n, municipal acts that would otherwise be considered discretionary will only be deemed ministerial if a policy or rule limiting discretion in the completion of such acts exists." *Benedict* v. *Norfolk*, 296 Conn. 518, 520 n.4, 997 A.2d 449 (2010); see also *Violano* v. *Fernandez*, supra, 280 Conn. 323–24. Here, there was no policy or rule limiting discretion in the completion of the act, and, instead, the text of the statute reserves to the chief of police discretion in completion of the act. Where the text of the statute explicitly vests the chief of police with the discretion to determine when and how to furnish police protection, we decline to hold that the same statute imposes a ministerial duty on the chief of police to furnish the protection he deems, in his discretion, to be necessary.

The plaintiff argues that the inclusion of certain discretionary matters within § 7-284 does not render the

[11] We note that "[i]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . . [T]he failure to provide, or the inadequacy of, police protection usually does not give rise to a cause of action in tort against a city. . . . The deployment of officers is particularly a governmental function. Considerable latitude must be allowed to [a police chief] in the deployment of his officers, or in enforcing discipline. Indeed, because a police chief's authority to assign his officers to particular duties is deemed a matter that concerns the public safety, he may not be deprived of his power to exercise his own discretion and judgment as to the number, qualifications and identity of officers needed for particular situations at any given time . . . ." (Citation omitted; internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 180.

mandatory directive any less mandatory. We do not disagree that in some circumstances, a ministerial duty may follow a discretionary determination. See *Pluhow-sky* v. *New Haven*, 151 Conn. 337, 347–48, 197 A.2d 645 (1964) ("A ministerial duty on the part of an official often follows a quasi-judicial determination by that official as to the existence of a state of facts. Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the duty of giving effect, by taking appropriate action, to the determination is often ministerial."). The plaintiff relies principally on *Wright* v. *Brown*, 167 Conn. 464, 356 A.2d 176 (1975).[12] In that case, the statute in question, General Statutes (Rev. to 1975) § 22-358, required the canine official to make a discretionary determination as to whether there had been a dog bite or dog attack, and, upon making that determination, required that the dog be quarantined, and gave explicit direction on the nature and duration of the quarantine. Id., 466 and n.1. The language of the statute removed the canine official's discretion to determine how and for how long a dog should be quarantined. The statute in question in *Wright* clearly created a ministerial duty, as it created a "duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." Id., 471. For that reason, it is readily distinguishable from the

---

[12] The plaintiff also argues that *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 397, 955 A.2d 107 (2008) stands for the proposition that the method of performing an act can be discretionary even though the duty to perform it is mandatory. In *Soderlund*, the plaintiff brought a negligence action against a police officer and the city of Meriden for failing to remove from the statewide computer system an arrest warrant that had been vacated by a court. Id., 392. This court concluded that "[o]n the basis of the narrow facts of the present case, a judge's order to vacate an arrest warrant is mandatory even upon a police officer." Id., 399. The court noted that although the order did not specify how the arrest warrant was vacated, it was clearly mandatory as it involved no exercise of judgment or discretion. Id., 397. *Soderlund* is not instructive in determining whether an act is ministerial where the source of the alleged duty vests discretion with the official.

matter at hand and does not persuade us that a ministerial duty to furnish police protection flowed from the discretionary act of determining whether police protection was necessary.

## B

The plaintiff next claims that the court erred by holding that there was no genuine issue of material fact as to whether the municipal defendants were engaged in governmental, not proprietary, conduct by requiring the carnival promoters to use and to pay for extra duty police officers as security for the carnival.[13] We disagree.

The permit issued to Kelly by the police department required that the permitee provide security for the event, which security was to be coordinated with the

---

[13] The municipal defendants, relying on *Haynes v. Middletown*, 122 Conn. App. 72, 80, 997 A.2d 636, cert. granted, 298 Conn. 907, 3 A.3d 70 (2010), assert that the plaintiff may not invoke the pecuniary interest exception because it was not specially pleaded in reply to the city's immunity defense. In their answer, the municipal defendants specially pleaded municipal and governmental immunity. The plaintiff replied to the municipal defendants' special defenses with a general denial, and first raised the pecuniary benefit exception in her opposition to the municipal defendants' motion for summary judgment. Although counsel for the municipal defendants noted during oral argument on the motion for summary judgment that she did not know the pecuniary benefit exception was at issue until the plaintiff's opposition, she did not argue that this exception was foreclosed to the plaintiff as a result of her failure to plead it pursuant to Practice Book § 10-57, which requires that a "[m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply." The court, therefore, never concluded that the pecuniary exception was inapplicable because the plaintiff failed to plead it. Our Supreme Court previously has "afforded trial courts discretion to overlook violations of the rules of practice and to review claims brought in violation of those rules as long as the opposing party has not raised a timely objection to the procedural deficiency." *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 273, 819 A.2d 773 (2003). In the absence of a timely objection to the failure to plead the pecuniary exception to governmental immunity, we will review the merits of the plaintiff's claim. See *Mollica* v. *Toohey*, 134 Conn. App. 607, 611 n.3, 39 A.3d 1202 (2012).

police department's outside overtime office. The plaintiff argued in her opposition to the municipal defendants' motion for summary judgment that, even assuming that the municipal defendants' acts were discretionary, immunity still did not apply because the city received a corporate profit or pecuniary benefit. She claimed that any time police officers are required pursuant to § 7-284,[14] the police officers are acting in the pecuniary interest of the city. The court determined first that the plaintiff adduced no evidence demonstrating that the city received any payment at all. The court also concluded that, even if the city had been paid for overtime charges for police officers assigned to the carnival, the plaintiff produced no evidence to prove that the city made a profit from providing police protection to the carnival, and, accordingly, the requirement of § 52-557n (a) (1) (B) was not met.

Section 52-557n (a) (1) (B) holds municipalities liable for damages to person or property caused by "negligence in the performance of functions from which the political subdivision derives a special corporate or pecuniary benefit . . . ." This section codifies the common-law rule that municipalities are liable for their negligent acts committed in their proprietary capacity. *Considine* v. *Waterbury*, 279 Conn. 830, 844, 905 A.2d 70 (2006). "If a municipality is acting only as the agent or representative of the state in carrying out its public purposes . . . then it clearly is not deriving a special corporate benefit or pecuniary profit. Two classes of activities fall within the broader category of acting as the agent of the state: [1] those imposed by the [s]tate for the benefit of the general public, and [2] those which arise out of legislation imposed in pursuance of a general policy, manifested by legislation affecting similar

[14] General Statutes § 7-284 provides in relevant part that any protection provided pursuant to that statute "shall be paid for by the person or persons operating, conducting or promoting such game, exhibition or contest."

corporations, for the particular advantage of the inhabitants of the municipality, and only through this, and indirectly, for the benefit of the people at large. . . . For example, the maintenance of the public peace or prevention of disease would fall within the first class . . . while the maintenance of a park system would fall within the second class." (Citations omitted; internal quotation marks omitted.) Id., 845–46. "On the other side of the distinction, a municipality generally has been determined to be acting for its own special corporate benefit or pecuniary profit where it engages in an activity for the particular benefit of its inhabitants . . . or if it derives revenue in excess of its costs from the activity." (Citation omitted; internal quotation marks omitted.) Id., 847.

Section 7-284 specifically directs that necessary police protection provided to a place of public amusement "shall be paid for by the person or persons operating, conducting or promoting such game, exhibition or contest." There is no evidence that the city billed for police protection under § 7-284 for the particular benefit of its inhabitants, nor is there evidence that it derived revenue in excess of its costs.[15] Our Supreme Court, in the context of a first amendment challenge to § 7-284, determined that the statute serves the government's interest in both public safety and financial responsibility. *Morascini* v. *Commissioner of Public Safety*, 236 Conn. 781, 801–802, 675 A.2d 1340 (1996). "Absent § 7-284, state and local governments would be without authority to seek compensation for police services furnished to private entrepreneurs. The governmental interest in maintaining public order

---

[15] We agree with the court's conclusion that there was no evidence that the city received any payment for providing police protection, let alone a profit. Although the existence of an actual pecuniary profit is a factor in deciding whether the function is proprietary, our Supreme Court has noted that "reliance on it alone would create problematic incentives and arbitrary results." *Considine* v. *Waterbury*, supra, 279 Conn. 847 n.11.

consequently would be achieved less effectively in the absence of § 7-284 because its absence would place financial strain on various state and local police departments. . . . [I]t is likely that without § 7-284, public safety would suffer because many cities and towns would be forced by financial circumstances to curtail the number of police officers that presently are covered adequately because of § 7-284." Id., 802.

The purpose of § 7-284 is to maintain the public peace while also transferring the financial burden to private event sponsors. Id. Billing private event promoters for necessary police protection pursuant to § 7-284 is not done for the purpose of deriving a corporate profit, but for public safety and financial responsibility. See id., 801–802. The city, in complying with § 7-284, acts as the agent of the state in carrying out its public purposes. See *Considine* v. *Waterbury*, supra, 279 Conn. 845–46. Accordingly, we conclude that the city was acting in a governmental, not proprietary, function by requiring the carnival promoters to use and to pay for extra duty police officers as security for the carnival.[16] The court therefore properly rendered summary judgment in favor of the municipal defendants.

---

[16] The plaintiff argues that *Plainfield* v. *Commissioner of Revenue Services*, 213 Conn. 269, 567 A.2d 379 (1989), establishes that police protection provided pursuant to § 7-284 is not governmental in nature. We are not persuaded. In *Plainfield*, the court addressed the question of whether the rendering of services under §7-284 was a taxable sale under General Statutes (Rev. to 1985) § 12-407 (2) (i) (E), which defined as taxable sale "the rendering of certain services for a consideration . . . [including] private investigation, protection, patrol work, watchman and armored car services." Id., 272. The plaintiff town claimed that only services performed on a private basis, rather than a public basis, were taxable, and that there can be no sales tax due for services rendered by its police officers in protecting the public. Id. The court held that the services rendered were private in nature, and bolstered its conclusion by the specific mandate in § 7-284 that the services rendered be paid for by the promoter. Id., 274. A determination that a payment pursuant to § 7-284 is private as opposed to public for the purposes of taxation is not instructive in determining whether the city received a pecuniary benefit.

## II

The plaintiff also claims that the court erred by holding that there was no genuine issue of material fact as to whether 5 Star had the right to use and to occupy the carnival premises. The plaintiff claims that there is a genuine issue of material fact as to (1) whether Kelly expressly was authorized by 5 Star to obtain permits on its behalf and (2) whether, in the absence of express authority, Solution impliedly was authorized by 5 Star to obtain permits on its behalf. 5 Star claims that it was not the owner nor was it the possessor of the land where the incident occurred, and therefore it owed no duty to the decedent. We agree with 5 Star that the court properly held that there was no genuine issue of material fact as to whether it was in possession or control of the premises.

The second count of the plaintiff's third amended complaint alleged negligence against 5 Star. Specifically, the plaintiff claimed that 5 Star was negligent in that it, inter alia, failed to provide adequate security or to supervise the carnival properly. The complaint alleged that, at all relevant times, 5 Star "owned, maintained, controlled, possessed, provided and operated amusement rides and other fun booths for use at carnivals including 'Midway 2005,' " but alleged no facts relating to 5 Star's possession or control of the premises. The complaint alleged that 5 Star and Solution jointly applied for and were issued permits. In its memorandum of law in support of its motion for summary judgment, 5 Star argued that it was not involved in the permit application process and that neither Kelly nor Solution were agents of 5 Star or otherwise authorized to act on its behalf. Accompanying the motion were the affidavit of Linda Coleman and Kelly's deposition testimony.

The court found that the plaintiff, in opposing 5 Star's motion for summary judgment, did not adduce any evidence to show that 5 Star was the permitee, owned, rented, possessed or controlled the premises where the carnival took place other than adducing the permits. The court noted that, although 5 Star was listed on both the permit from the police department and from the department of parks and recreation, Kelly's testimony established that he had no authority to represent 5 Star or act on its behalf while obtaining permits from either department. The court held, that 5 Star therefore did not owe a duty to the decedent as a business invitee and, accordingly, rendered summary judgment in favor of 5 Star as to the second count of the plaintiff's third amended complaint.

The plaintiff filed a motion to reargue and reconsider 5 Star's motion for summary judgment and her objection thereto, arguing that the issue of control was not raised by 5 Star in its motion for summary judgment, was not addressed in her objection and was not orally argued by either party. The plaintif also argued that 5 Star had control of the premises. On March 7, 2011, the court heard argument on the plaintiff's motion. The court affirmed its original decision granting 5 Star's motion for summary judgment. The plaintiff did not seek an articulation.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . The law is clear that [a] possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." (Citation omitted; internal quotation marks omitted.) *Gargano* v. *Azpiri*, 110 Conn. App. 502, 508, 955 A.2d 593 (2008). "[L]iability can be predicated upon

negligence in the control and possession of premises, as opposed to mere ownership thereof." *Mack* v. *Clinch,* 166 Conn. 295, 296, 348 A.2d 669 (1974). "Thus, the dispositive issue in deciding whether a duty exists is whether the [defendant] has any right to possession and control of the property." *LaFlamme* v. *Dallessio,* 261 Conn. 247, 252, 802 A.2d 63 (2002). "Retention of control is essentially a matter of intention to be determined in the light of all the significant circumstances. . . . The word control has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee." (Internal quotation marks omitted.) *Fiorelli* v. *Gorsky,* 120 Conn. App. 298, 308, 991 A.2d 1105, cert. denied, 298 Conn. 933, 10 A.3d 517 (2010).

The pleadings, affidavits and other proof submitted support the court's conclusion that there was no genuine issue of material fact as to whether 5 Star possessed or controlled the premises. The plaintiff's third amended complaint did not allege that 5 Star possessed or controlled the premises on which the carnival was held; it merely alleged possession and control of the booths and rides in use at the carnival. Moreover, the plaintiff did not introduce any evidence that raised a genuine issue of material fact that 5 Star was in possession or control of the premises.

The deposition testimony of Kelly was that he was not authorized by 5 Star in writing to act on its behalf, that a representative of 5 Star did not sign any of the documents submitted in the permitting process and that he never asked 5 Star if Solution could submit documents to the city under 5 Star's name, with the exception of requests for the certificate of insurance. He acknowledged writing "5 Star Amusement, Inc. c/o the Solution, LLC" on the permit from the parks and recreation department, and testified "that could have

just been how I filled it out that year, with no malice." He then stated that "[u]pon further reflection of this document, I did not have the authority to do that." Moreover, Linda Coleman attested in her affidavit that neither she nor her husband, Robert E. Coleman, Jr., submitted applications to hold the carnival, that neither were involved in the permitting process, and that neither Kelly nor Solution were agents of 5 Star and neither were authorized to enter into contracts on 5 Star's behalf. She also attested that although she knew that Kelly had applied for permits, she did not know that he did so in 5 Star's name. In light of the uncontroverted testimony of Kelly and Linda Coleman, there is no genuine issue of material fact as to whether Kelly had the authority to seek permits on behalf of 5 Star.[17]

In her motion to reargue and reconsider, the plaintiff argued that Kelly's testimony offers evidence indicating that 5 Star had possession or control of the carnival premises. Kelly testified that, to the best of his knowledge, 5 Star took precautions to protect its rides and equipment during hours of nonoperation. He also testified that 5 Star provided a ticket booth where tickets for the carnival were sold. Kelly testified that patrons, after purchasing their tickets, would then come through a second gate with their tickets, where the tickets would be collected and torn in half. On the night of the incident in question, Kelly was at the second gate taking tickets. Kelly's testimony does not create a genuine issue of

---

[17] We do not address the plaintiff's argument that Kelly had implied authority from 5 Star because Solution and 5 Star operated a joint venture. The plaintiff did not plead a joint venture between the two entities, and she did not present the issue to the court until the penultimate sentence of her motion to reargue and reconsider in which she baldly asserts that "[t]his was a joint venture for both entities' benefit." In oral argument before the court on the motion to reargue and reconsider, the court questioned counsel for the plaintiff as to whether the joint venture claim would be a permissible amendment to the complaint, but at no time did the plaintiff amend the complaint to include an allegation of joint venture.

material fact as to whether 5 Star had the "power or authority to manage, superintend, direct or oversee" the premises. (Internal quotation marks omitted.) *Fiorelli* v. *Gorsky*, supra, 120 Conn. App. 308. The evidence presented demonstrates that 5 Star was not involved in any regard in the procuring of security or police coverage for the event. The fact that 5 Star protected its rides and equipment does not establish whether it had possession or control over the carnival premises. Likewise, the fact that 5 Star provided a ticket booth does not, without more, establish that it was in control of the premises.

The plaintiff failed to present evidence to show that there was a genuine issue of material fact as to whether 5 Star had possession or control over the premises. "[T]he burden of showing the nonexistence of any material fact is on the party seeking summary judgment . . . . It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute. . . . The party opposing summary judgment must present a factual predicate for his argument to raise a genuine issue of fact." (Citation omitted; internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 803, 842 A.2d 1134 (2004). Here, 5 Star successfully demonstrated the absence of a material dispute as to its possession and control of the premises, and the plaintiff failed to present any factual predicate to raise an issue of material fact. The court therefore properly rendered summary judgment in favor of 5 Star.

The judgments are affirmed.

In this opinion the other judges concurred.