******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS VENTURA *v*. TOWN OF EAST HAVEN ET AL.
(AC 37833)

Keller, Prescott and West Js.

*Argued September 21, 2016—officially released January 31, 2017*

(Appeal from Superior Court, judicial district of New Haven, Wilson, J.)

*Aaron S. Bayer*, with whom was *Tadhg A.J. Dooley*, for the appellant (named defendant).

*James J. Healy*, with whom were *Joel T. Faxon*, and, on the brief, *Timothy P. Pothin* and *Jason K. Gamsby*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, the town of East Haven,[1] appeals from the judgment rendered in favor of the plaintiff, Thomas Ventura, after the jury returned a verdict awarding him damages for personal injuries he sustained when he was struck by a motor vehicle driven by a private individual, Vladimir Trnka. The jury concluded that the defendant was not immune from liability because, earlier in the evening on the day of the accident, East Haven police officer Jeffrey Strand, after investigating an unrelated domestic violence incident involving Trnka, had a clear ministerial duty to tow Trnka's vehicle on the basis of the vehicle's invalid registration and improper plates. The court denied the defendant's motions to direct or to set aside the verdict.

On appeal, the defendant claims that the trial court erred when it failed to (1) direct a verdict for the defendant on the basis of governmental immunity; (2) direct or set aside the verdict on the ground that the plaintiff had not produced sufficient evidence that Strand's alleged negligence actually or proximately caused the plaintiff's injuries; and (3) set aside the jury's verdict because the court admitted irrelevant and prejudicial testimony regarding Trnka's possible intoxication and agitation, and permitted the plaintiff's expert to testify about East Haven police procedures despite his having no special knowledge about them. We agree with the defendant's first claim and, accordingly, reverse the judgment of the trial court.[2]

On the basis of the evidence presented, the jury reasonably could have found the following facts. On November 4, 2006, Strand was dispatched to investigate a "[p]ossible domestic" incident occurring inside a "[l]arge white work van in the McDonald's drive-thru" with an "[i]rate male . . . operator." The person who called 911 described the driver as possibly being "on drugs" or "drunk" and "nodding out." The caller further described the driver as "punching the ceiling" and "not normal." Upon arriving at the McDonald's, Strand identified a vehicle in the drive-through lane that he believed might be the white work van described by dispatch. He pulled his cruiser "face to face" with the white work van, and walked around the van to approach the driver from behind, as he was "on a . . . domestic violence call."

While approaching the driver, Strand radioed in the license plate number, which dispatch confirmed as "an '89 FORD cutaway cargo van, white . . . out of Townsend Ave. Val Trnka, '07 expiration." Despite believing that the "white work van" that dispatch described was the vehicle in front of him, Strand was mistaken in that it was actually a 1997 white Chevy box truck.[3] He did not ask for registration or proof of insurance, and did not check the emblems on the vehicle to ensure that

it was the make and model dispatch had described. Strand then instructed Trnka, the driver, to pull into a parking spot so he could continue his investigation. Victoria Conte, another police officer, arrived on the scene and helped Strand separate and interview Trnka and his girlfriend, Kristen D'Aniello, who was a passenger in the truck. After determining that there was no probable cause for arrest because there was no physical violence between Trnka and D'Aniello during the period of time they were in the drive-through, Strand and Conte further concluded that there was no need to administer a field sobriety test to Trnka. Strand asked Trnka and D'Aniello for their driver's licenses, but neither could produce one. He subsequently called dispatch to run their names through the Department of Motor Vehicles (DMV) database to check for valid driver's licenses and National Crime Information Center database to check for any outstanding warrants. The dispatcher only was able to confirm that there were no outstanding warrants for either individual, because the DMV database was malfunctioning. Because Strand could not confirm that Trnka had a valid driver's license, he decided to drive Trnka home[4] and directed Trnka to leave his truck parked in the McDonald's parking lot and keep his keys.[5] Conte drove D'Aniello to her residence.

Fifty-six minutes later, Trnka retrieved his truck from the McDonald's parking lot and drove it to the intersection of Townsend Avenue and Park Lane in New Haven, less than one mile from Trnka's residence. The plaintiff, an eighteen year old high school student at that time, was entering his vehicle, which was parked on the side of the road. Trnka hit the plaintiff with his vehicle, causing him to suffer severe injuries including several compound fractures and the rupture of both testicles. Trnka fled the scene. Shortly thereafter, a radio transmission indicated that a hit-and-run had occurred on Townsend Avenue. As Strand was still patrolling, he radioed for more information because he believed the driver of the fleeing vehicle might attempt to enter East Haven. When Strand was informed that the vehicle's description was a "large white pickup truck," or a "box truck, a white truck," he realized that it might be the same vehicle that he had previously directed Trnka to leave in the McDonald's parking lot,[6] and "mov[ed] in the direction of the lot at that point." After informing his supervisor that the truck that was the subject of his earlier stop at the McDonald's was no longer there, Strand subsequently drove to Trnka's residence on Townsend Avenue to further investigate his suspicion that Trnka's vehicle may have been involved in the hit-and-run.

At Trnka's residence, Strand immediately spotted a white box truck on the property and radioed Sergeant Frank Montagna, who was then at the accident scene, for additional information regarding the vehicle involved. He further checked the license plate of the

truck at Trnka's residence against the license plate number he had earlier called in at the McDonald's, and found that they matched. Montagna then relayed that the vehicle involved was a white box truck with a missing driver's side mirror and red paint transfer on the passenger side. Strand corroborated the damage to the truck and stated that such damage was not present at the time of the incident in the McDonald's parking lot. Strand then requested that New Haven police be dispatched to Trnka's residence, because they had jurisdiction over the New Haven hit-and-run.

New Haven police officer Mark Foster arrested Trnka based on the evidence of the red paint transfer, the broken mirror, and Strand's statements that the white box truck was the same truck that he had encountered earlier and that the damage to the driver's side had not been present earlier. Trnka was charged with evasion of responsibility in violation of General Statutes § 14-224 and failure to drive in the proper lane in violation of General Statutes § 14-236. Foster, as part of the motor vehicle investigation, further determined that the license plate affixed to the truck did not match the description of the vehicle to which that plate had been assigned and that Trnka was driving without valid insurance or registration, determinations that were not made by Strand at the time he investigated the report of the domestic violence incident. Trnka was, therefore, further charged with misuse of plates in violation of General Statutes § 14-147, operating an unregistered motor vehicle in violation of General Statutes § 14-12a, and operating a motor vehicle without insurance in violation of General Statutes § 14-213b.

Although Foster was aware that the 911 caller, when reporting the earlier possible domestic violence incident, stated that there may have been drugs or alcohol involved, Foster did not smell alcohol on Trnka or believe that there was probable cause to conduct a field sobriety test. In Strand's case incident report,[7] he described Trnka as "highly agitated" and "emotional," after describing the alleged domestic violence incident as a "verbal argument" between "two people sitting in a vehicle."[8]

The plaintiff subsequently sought to recover damages for his injuries and commenced the present action against Strand[9] and the defendant, alleging that Strand negligently violated a ministerial duty imposed on him by the East Haven Police Department Tow Board Rules & Regulations (tow rules) by failing to have Trnka's truck towed from the McDonald's parking lot. The plaintiff's operative complaint alleged that Strand "failed to have Trnka's [truck] towed and impounded as required in every case involving misuse of plates, lack of insurance or registration by rules promulgated by and for the East Haven police," and "failed to secure Trnka's [truck] so that he could not return and operate

it unlawfully in violation of due care and police procedures." In particular, he alleged that paragraph 7 of the tow rules required that "[a]ll motor vehicle violations are to be towed to include unregistered and misuse of plates. Operators of these vehicles are not allowed to park [the] vehicle or leave [it] in private parking areas." The complaint further alleged that the defendant was directly liable for Strand's negligence under General Statutes § 52-557n (a) (1) (A).[10] In its answer, the defendant raised several special defenses, including that of governmental immunity.

During the trial, the plaintiff introduced into evidence a copy of the tow rules. This document, effective September 1, 1998, was prefaced by a memorandum issued by then Chief of Police Leonard I. Gallo stating that "[a]ll establishments who tow for the East Haven Police Department must adhere to these Rules & Regulations." The first paragraph of the tow rules provides that "any company or person with towing equipment and having their business within the Town of East Haven may make application to the East Haven Police Department to be on the East Haven Police Department rotating tow list provided they conform to the following rules and regulations."

The defendant moved for a directed verdict after the close of the plaintiff's case-in-chief. The court reserved decision on the motion for directed verdict, as permitted under Practice Book § 16-37, and allowed the defense to proceed. In his closing argument, the plaintiff argued to the jury that the tow rules applied in equal force to police officers and to businesses conducting towing operations at the direction of the police. The plaintiff further argued that Strand was negligent in not towing and impounding, or otherwise securing, Trnka's truck on the basis of the motor vehicle violations that he knew existed at the time of his investigation of the possible domestic violence incident in the McDonald's parking lot, and because of that knowledge, he did not have the discretion to decline to tow the truck. The defendant argued that Strand did not know of the motor vehicle violations existing at the time of the stop, and that even if he was aware of such violations, the decision to tow was discretionary, and thus, the defendant was protected by governmental immunity.

Regarding the defendant's special defense of governmental immunity, the court instructed the jury that "[i]n this case, the parties agree and the court instructs you that . . . Strand was a municipal employee engaged in a governmental function at the time of the plaintiff's alleged injuries. The parties disagree, however, as to whether . . . Strand was free to exercise discretion when acting or failing to act as he did.

"The question for you . . . [to decide] is whether . . . Strand was performing a discretionary or ministerial act when the plaintiff was allegedly injured by his

conduct. As I stated earlier, the burden is on the defendant, who desires the benefit of governmental immunity, to persuade you by a . . . fair preponderance of the evidence, that . . . Strand's actions or inactions were the result of the exercise of discretion rather than the failure to comport with a mandatory course of conduct.

"If you find that the defendant has failed to meet the burden of establishing this special defense, then no immunity would protect the defendant from liability if you determine that . . . Strand was negligent, and that negligence proximately caused the injuries claimed by the plaintiff, you would therefore find in favor of the plaintiff. If, however, you find that the defendant has satisfied this burden, you would then render a verdict for the defendant."

The jury returned a verdict for the plaintiff and found damages in the amount of $12,200,000, finding, by way of its response to a jury interrogatory, that Strand negligently violated a ministerial duty to tow Trnka's truck.[11] Following trial, on January 3, 2014, the defendant filed a renewed motion for a directed verdict and a motion to set aside the verdict.[12] It also filed a motion seeking a remittitur in the amount of $11,000,000 and a collateral source reduction. In a memorandum of decision dated July 10, 2014, the court denied the defendant's renewed motion for a directed verdict and its motion to set aside the verdict, but granted the motion for remittitur in the amount of $6,000,000, thereby reducing the verdict to $6,200,000.

In denying the defendant's motions to direct or set aside the verdict, the court found, on the issue of governmental immunity, that "[t]here was sufficient evidence adduced during the plaintiff's case-in-chief on the issue of whether Strand's actions were ministerial or discretionary. . . . The plain language of [paragraph 7 of the tow rules] falls within the definition of ministerial. There is no exercise of judgment in the language of the regulation." Later, while rendering judgment for the plaintiff on March 13, 2015, the court granted the defendant's request for a collateral source reduction, and reduced the judgment to $5,977,553.59 before interest.[13] This appeal followed.

Before turning to the specifics of the defendant's first claim, we set forth our standard of review for determining whether a court has erred in denying a motion for a directed verdict. "Whether the evidence presented by the plaintiff was sufficient to withstand a motion for directed verdict is a question of law, over which our review is plenary. . . . Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [as to whether] to direct a verdict in favor of a defendant we must consider the evidence

in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Ibar* v. *Stratek Plastic Ltd.*, 145 Conn. App. 401, 410, 76 A.3d 202, cert. denied, 310 Conn. 938, 79 A.3d 891 (2013); see also *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 512–13, 43 A.3d 69 (2012). Important to our analysis is that a "verdict may be directed where the decisive question is one of law . . . ." (Internal quotation marks omitted.) *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 693, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

The defendant claims that the court improperly denied its motion for a directed verdict on the basis of governmental immunity because (1) there was no statute, ordinance, or rule that imposed on East Haven police officers a clear ministerial duty to tow,[14] and (2) even if there was a ministerial duty to tow, there was insufficient evidence to conclude that Strand was aware of the motor vehicle violations that allegedly triggered the ministerial duty to tow Trnka's truck under the tow rules. In response, the plaintiff argues that the jury properly found that the tow rules created a clear ministerial duty that required Strand to tow Trnka's truck, and that there was sufficient evidence from which the jury could have concluded that Strand was aware of the motor vehicle violations that triggered such a duty. We agree with the defendant on the first ground and conclude, as a matter of law, that the tow rules did not impose a clear ministerial obligation on Strand to tow Trnka's truck.

"We begin by observing the broad scope of governmental immunity that is traditionally afforded to the actions of municipal police departments. [I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . . [Accordingly] [t]he failure to provide, or the inadequacy of, police protection usually does not give rise to a cause of action in tort against a city." (Internal quotation marks omitted.) *Coley* v. *Hartford*, 312 Conn. 150, 164, 95 A.3d 480 (2014).

We now turn to the general principles of municipal liability. As we have noted, "[m]unicipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immu-

nity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts . . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Internal quotation marks omitted.) *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 270–71, 41 A.3d 1147 (2012).

Thus, "[u]nder § 52-557n (a) (1) (A), a municipality generally is liable for the ministerial acts of its agents. Section 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Footnotes omitted; internal quotation marks omitted.) *Mills* v. *Solution, LLC*, 138 Conn. App. 40, 47, 50 A.3d 381, cert. denied, 307 Conn. 928, 55 A.3d 570 (2012).

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . If by statute or other rule of law the official's duty is *clearly* ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance. . . . [M]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations omitted; emphasis added; internal quotation marks omitted.) *Grignano* v. *Milford*, 106 Conn. App. 648, 654, 943 A.2d 507 (2008). "[E]vidence of a ministerial duty is provided by an explicit statutory provision, town charter, rule, ordinance or some other written directive." *Wisniewski* v. *Darien*, 135 Conn. App. 364, 374, 42 A.3d 436 (2012).

Exceptions to governmental immunity will be found only if there is a duty to act that is so "clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 307, 999 A.2d 700 (2010). As such, our analysis in the present case turns on whether the alleged duty to tow under the tow rules applied to East Haven police officers and, if so, whether that duty is clearly ministerial rather than discretionary,[15] which necessarily involves an interpretation of the tow rules.

Before turning to the merits of the defendant's claim, we address the plaintiff's argument that the determination of whether the tow rules imposed a ministerial duty properly was left to the jury. The plaintiff argues

that "the question of whether a duty is ministerial or discretionary is a fact question that could only have been resolved by the jury."[16] The defendant argues, in turn, that the question of whether the tow rules imposed a ministerial obligation to tow should have been decided by the court as a matter of law, and never should have been submitted to the jury. The defendant is correct in its analysis that, although the "subsidiary question of whether official acts are ministerial or discretionary is normally a question of fact [see *Coley* v. *Hartford*, supra, 312 Conn. 162] where, as here, that determination depends on the interpretation of a statute or municipal ordinance, the question is one of law, which this court may resolve de novo." Thus, where a question turns on the interpretation of a municipal ordinance or policy, it is inappropriate for a jury to decide. The court should have made this determination and not left it to the jury. See *Honulik* v. *Greenwich*, 293 Conn. 698, 710, 980 A.2d 880 (2009) (observing that principles of statutory construction govern interpretation of town policies); *State* v. *Orr*, 291 Conn. 642, 650, 969 A.2d 750 (2009) ("statutory interpretation is a question of law"); *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 318–19, 819 A.2d 844 (2003) (referring to General Statutes § 52-216 and Practice Book § 16-9 in holding that court decides all issues of law and submits questions of fact to jury); *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, 38 Conn. App. 290, 296–97, 660 A.2d 369 (jury instruction which forced jury to decide material question of law requiring statutory interpretation analysis was improper), cert. denied, 235 Conn. 904, 665 A.2d 901 (1995).

Because the resolution of this issue calls for the interpretation of the tow rules as they apply to police officers, we exercise plenary review in accordance with our well established rules of statutory construction. Rules of this nature are to be interpreted in the manner that we interpret statutes. *Honulik* v. *Greenwich*, supra, 293 Conn. 710 ("[p]rinciples of statutory construction govern our interpretation of town policy manual and pay plan"); *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005) ("[a]s with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary" [internal quotation marks omitted]).[17]

"The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs

us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Mickey* v. *Mickey*, 292 Conn. 597, 613–14, 974 A.2d 641 (2009).

The principles of statutory construction favor a "rational and sensible [result]. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the statute effective and workable, and not one which leads to difficult and possibly bizarre results." (Internal quotation marks omitted.) *State* v. *Anonymous*, 237 Conn. 501, 514–15, 680 A.2d 956 (1996).

We now turn to the merits of the fundamental question in this appeal, namely, whether the tow rules apply to East Haven police officers and impose a clear ministerial duty on East Haven police officers to tow the vehicles of all drivers who have violated motor vehicle laws. We conclude that the plain language of the tow rules does not place such a duty on East Haven police officers.[18]

We note that, because § 52-557n (a) (1) constitutes an abrogation of common-law governmental immunity, it must be strictly construed. *Segreto* v. *Bristol*, 71 Conn. App. 844, 849, 804 A.2d 928 (2002). Our Supreme Court has concluded that "for the purposes of § 52-557n, municipal acts that would otherwise be considered discretionary will only be deemed ministerial if a policy or rule limiting discretion in the completion of such acts exists." *Benedict* v. *Norfolk*, 296 Conn. 518, 520 n.4, 997 A.2d 449 (2010). Moreover, as stated, a plaintiff seeking to avoid the immunity typically afforded to police officers must demonstrate that "by statute or other rule of law the official's duty is *clearly* ministerial rather than discretionary . . . ." (Emphasis added; internal quotation marks omitted.) *Mills* v. *Solution, LLC*, supra, 138 Conn. App. 48; see also *Grignano* v. *Milford*, supra, 106 Conn. App. 654. The standard calls for a statute, rule, or ordinance to "clearly" impose a ministerial standard so as to eliminate the possibility that the municipality waived immunity inadvertently, inconsistently, or ambiguously.

Although the operative complaint characterizes Strand's actions as ministerial in nature, the tow rules specifically provide, in paragraph 6, that police discretion "will prevail regarding vehicles that are to be towed." Here, the plaintiff argues that a single paragraph in the tow rules, out of twenty-one total, imposes a clear ministerial duty and thereby obligates East Haven police officers to tow the vehicles of all drivers who have violated motor vehicle laws. The defendant counters that the plaintiff failed to identify a statute or rule of law "clearly" demonstrating that Strand had a ministerial obligation to tow Trnka's truck, and that a single paragraph in a set of tow rules that are directed at and regulate tow companies doing business with the defendant is inapplicable to police officers. The court, agreeing with the plaintiff, determined that "[t]he plain language of [paragraph 7 of the tow rules] falls within the definition of ministerial. There is no exercise of judgment in the language of the regulation." We disagree with this isolated and unworkable interpretation of that single paragraph.

We begin with the text of the tow rules at issue, which are prefaced by the statement that "any company or person with towing equipment and having their business within the town of East Haven may make application to the East Haven Police Department to be on the East Haven Police Department rotating tow list provided *they* conform to the following rules and regulations." (Emphasis added.) Paragraph 7 states that "[a]ll motor vehicle violations are to be towed to include unregistered and misuse of plates. Operators of these vehicles are not allowed to park vehicle or leave in private parking areas."[19] Contrary to the plaintiff's interpretation, the immediately preceding paragraph, paragraph 6, states that "[o]fficer's discretion will prevail regarding vehicles that are to be towed. If vehicle is not a hazard or obstructing traffic the officer may contact AAA, etc. However, if vehicle is a hazard or obstructing the tow log is to be used."

Although, at first blush, paragraph 7 of the tow rules appears to mandate that "[a]ll motor vehicle violations are to be towed," when read in conjunction with the mandate in paragraph 6 that officer discretion will prevail, the rule in paragraph 7 cannot reasonably be interpreted as creating a clearly ministerial obligation to tow that is directed at police officers. The tow rules must be read as a whole, and cannot be parsed to force the reading of one paragraph in a proverbial vacuum.[20] *Ugrin* v. *Cheshire*, 307 Conn. 364, 383, 54 A.3d 532 (2012). When read together, paragraphs 6 and 7 are reconciled and make sense only with the understanding that the tow rules regulate tow truck operators and not police officers. Paragraph 6 informs tow truck operators that it is ultimately within police discretion as to whether a motor vehicle will be towed, and who may

tow it. Paragraph 7 then clarifies that, once an officer has exercised his discretion to order a motor vehicle towed, the tow company must follow the officer's direction to tow the vehicle. Vehicle owners cannot negotiate with tow truck companies to allow the vehicle to remain in a "private parking area." Examination of the surrounding paragraphs further reinforces this reading, as paragraph 8 prohibits tow truck operators from releasing towed vehicles to their owners without first obtaining permission from the East Haven Police Department. In fact, every rule is directed at a tow truck company or its operators;[21] eighteen out of the twenty-one paragraphs expressly provide a directive to "tow compan[ies]." The other three, which include paragraphs 6 and 7, are also clearly directed at tow companies. It would defy common sense to bury a rule that imposes a ministerial obligation on police officers to tow the vehicles of drivers who have committed motor vehicle infractions in the middle of a set of regulations directed at tow companies. Indeed, the plaintiff's expert, Peter Fearon, acknowledged that the tow rules are directed at tow truck operators. Finally, the tow rules are followed on the last page by a signature line for the "Applicant" to attest that "I have read and understand each of the above [rules] and will strictly adhere to these Rules & Regulations." "Applicant" clearly refers to tow truck operators because there is no place for a police officer to sign. Fearon himself conceded that the signature line is intended for a representative of "the tow company who wants to be on that tow list."

The plaintiff's interpretation of the tow rules also would lead to bizarre results that cannot be deemed workable under a statutory construction analysis. See *State* v. *Anonymous*, supra, 237 Conn. 515. Both the plaintiff and the trial court focused solely on the portion of paragraph 7 mandating the towing of vehicles that are unregistered and have misused plates, but they both failed to contemplate or discuss the ramifications of the entire clause—specifically, its directive that "all motor vehicle violations" must be towed. If the interpretation advanced by the plaintiff and adopted by the trial court is correct, East Haven police officers would be obligated to tow a motor vehicle in every situation in which an officer determined that a violation of the motor vehicle laws had occurred, not just those circumstances in which the motor vehicle is unregistered or has misused plates. For example, even if limited to the statutory definition of "violation" under Connecticut law,[22] the plaintiff's and the court's reading of paragraph 7 would mean that a police officer would be required to tow a motor vehicle every time a driver is stopped for rolling through a stop sign[23] or for failing to obey a yield sign.[24] As the defendant aptly points out in its brief, "even if the purported ministerial duty to tow were limited to violations involving misused plates and lack of registration—the violations that the trial court

focused on here—the results would still be absurd and unjust. That would mean, for example, that an officer who pulls over a man speeding to the labor and delivery ward with his pregnant wife would have no choice but to have the vehicle towed if the man could not provide his registration."[25] Such a conclusion would violate the principle of statutory construction against unworkable and bizarre results. "Indeed, it is particularly indefensible to indulge in a presumption that achieves such a bizarre and irrational result when, as in the present case, an alternative interpretation . . . leads to a perfectly reasonable and logical result." *State* v. *Courchesne*, 296 Conn. 622, 710, 998 A.2d 1 (2010). If paragraph 7 completely eliminated police officers' discretion in this regard, it would clearly contradict the language in paragraph 6 that "[o]fficers' discretion will prevail regarding vehicles that are to be towed," rendering it unworkable and superfluous. See *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008) ("[i]nterpreting a statute to render some of its language superfluous violates cardinal principles of statutory interpretation"); *State* v. *Anonymous*, supra, 237 Conn. 515 (where two interpretations possible, court will adopt one that renders rule workable).

As previously discussed, however, there is no conflict between paragraphs 6 and 7 of the tow rules when they are interpreted and read together so as to apply to tow truck operators and not police officers. Of the two constructions that are possible, we adopt the one that makes the tow rules effective and workable, which, in this case, is that there is no clear ministerial duty of a police officer to tow.

Moreover, to the extent that any ambiguity exists in the tow rules, we must resolve any such ambiguity in favor of governmental immunity. As we noted previously, the principles of statutory construction govern our interpretation of town policies such as the tow rules. See *Honulik* v. *Greenwich*, supra, 293 Conn. 710. "Statutes that abrogate or modify governmental immunity are to be strictly construed. . . . This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Internal quotation marks omitted.) *Segreto* v. *Bristol*, supra, 71 Conn. App. 849–50. As our case law makes clear, immunity can be overcome only if an official's duty is *clearly* ministerial rather than discretionary. *Mills* v. *Solution, LLC*, supra, 138 Conn. App. 48. Paragraph 7 of the tow rules, viewed in isolation, is perhaps ambiguous as to whether police officers have a duty to tow, but when that paragraph is read in conjunction with and harmonized with the rest of the tow rules, we cannot conclude that that one paragraph works to completely deprive police officers of the dis-

cretion that they are normally afforded.

Additional considerations support our conclusion that the tow rules do not create a clearly ministerial duty to tow. First, there is no state statute,[26] regulation, or municipal ordinance that requires police officers to tow or impound motor vehicles under the circumstances in this case. In fact, the plaintiff's own expert, Fearon, conceded that no state statute "says all unregistered vehicles must be towed."

Second, the plaintiff argues that the tow rules must apply to police officers because they were formally named the "East Haven Police Department Tow Board Rules & Regulations," and that each page of the tow rules has the name of the police department, the department's seal, and the name of the police chief, Gallo. This is incorrect. Only policies promulgated by the Board of Police Commissioners are binding on East Haven police officers and can create ministerial duties. See generally East Haven Town Charter, Ch. VI, § 7 (a) ("[t]he Police Commission shall have jurisdiction and general control of the Police Department and may make such rule and regulations that are not inconsistent with this section"). The tow rules were not promulgated by the Board of Police Commissioners; instead, they were drafted by an individual police officer, Liquori, and issued by the police chief, Gallo.

Third, while the plaintiff argues that Connecticut law does not impose a formal requirement on the types of policies that can qualify as ministerial obligations;[27] see, e.g., *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 279, 610 A.2d 193 (1992) (duty may be established through bulletins); and thus, it may not be relevant that the tow rules were not promulgated by the Board of Police Commissioners, those rules are expressly directed at tow truck operators, not East Haven police officers. They are prefaced by a memorandum, issued by Gallo, addressed to "Business Towing Establishments." The memorandum states that "[a]ll establishments who tow for the East Haven Police Department must adhere to these Rules & Regulations." Nowhere in the preface or body of the tow rules does it state that police officers must adhere to them. Especially discounting is the testimony of Liquori, the author of the tow rules, who testified at trial that they were applicable to "[t]he tow companies that wanted to tow for the police department." Liquori further testified that "they were never intended" for police officers. Fearon conceded during cross-examination at trial that the tow rules were "directed toward towing companies" and "not police officers," and that "[o]ne reason for [these] rule[s] might be that . . . the chief of police doesn't want any dispute out on the road between the tow truck companies and the police officers."[28]

Finally, the purpose of the tow rules is inconsistent with imposing a ministerial duty on police officers. The

drafter, Liquori, testified at trial that "[t]he purpose of these [rules] was to let the tow companies know what we expected of them if they wanted to work for the town or work with the police department in regards to the towing of vehicles." The rules were drafted in response to past issues that the police department had experienced with tow truck operators.[29]

Accordingly, we conclude that the plaintiff's cause of action fails as a matter of law because the tow rules imposed no clear ministerial duty on Strand to tow Trnka's truck prior to the accident that caused the plaintiff's injuries. As a result, the defendant is immune from liability. The trial court improperly denied the defendant's motion for a directed verdict on the ground of governmental immunity.

The judgment is reversed and the case is remanded to the trial court with direction to grant the defendant's motion for a directed verdict and to render judgment in favor of the defendant.

In this opinion the other judges concurred.

[1] Jeffrey Strand, a police officer, initially was named as a defendant in this case, but the plaintiff withdrew the action as to him prior to trial. We will refer in this opinion to the town of East Haven as the defendant and to Strand by name.

[2] The defendant, in its second claim, argued that the court erred in "refusing to direct or set aside the verdict on the ground that [the] plaintiff had not produced sufficient evidence that . . . Strand's alleged negligence actually or proximately caused the plaintiff's injuries." The defendant, in its third claim, appealed from the court's alleged error in not setting aside the jury's verdict on account of its erroneous and prejudicial evidentiary rulings. We need not reach the defendant's second and third claims, because our decision with respect to the first claim is dispositive of this case.

[3] Despite the 911 caller's description of the vehicle as a "big white . . . work van," Strand, while testifying, described the vehicle as a "large, white box truck." Pictures from the record reveal that the vehicle appears to match Strand's description best. A box truck is a utility truck with a box type body; therefore, in order to avoid confusion, we will refer to Trnka's vehicle as a truck.

[4] Trnka's residence was located one-half mile from the McDonald's.

[5] Officer Robert Ranfone of the East Haven Police Department, working an "extra duty job next door" to the McDonald's that evening, joined Strand and Conte at the scene. Ranfone allegedly knew Trnka for years and suggested the solution that Strand and Conte drive Trnka and D'Aniello to their respective homes.

[6] Another East Haven officer, Sergeant Frank Montagna, radioed Strand to point out the similarity in the description of the vehicle involved in the hit-and-run to the vehicle Strand had earlier encountered at the McDonald's.

[7] Foster completed a case incident report and a Connecticut uniform police accident report, the latter being required during a motor vehicle accident investigation. Strand testified that he completed only a case incident report because his response and investigation of the possible domestic incident at the McDonald's was not a motor vehicle stop.

[8] Strand's case incident report identified the vehicle as a 1989 Ford "cargo van."

[9] See footnote 1 of this opinion.

[10] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties. . . ." Thus, the statute makes the defendant liable for the negligent acts or omissions of its police officers acting within the scope of their employment or official duties, as Strand was here. But see General Statutes § 52-557n (a) (2) ("[e]xcept as otherwise provided by law, a political subdivision of the

state shall not be liable for damages to person or property caused by . . . [B] negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law").

[11] On the issue of governmental immunity, the court posed the following interrogatory to the jury: "Did the defendant prove by preponderance of the evidence that the decision on whether to tow and/or impound Vladimir Trnka's vehicle was within the discretion of . . . Officer Strand?" The jury answered "no" to this interrogatory.

[12] The underlying grounds for both the defendant's renewed motion for a directed verdict and the motion to set aside the verdict were that "[t]he verdict was against the evidence; [t]he verdict was against the law; and [t]he court erred in various evidentiary rulings thus preventing the defendant from having a fair trial." In the defendant's memorandum of law in support of its posttrial motions, it argued "that the evidence could not permit the jury to legally, logically, and reasonably conclude that liability existed here." More specifically, the defendant argued that the "evidence before the jury could not support a finding that there was a ministerial duty to tow Trnka's [truck] in this case."

[13] The plaintiff also filed a cross appeal challenging the trial court's ruling on the collateral source reduction, but subsequently withdrew his appeal.

[14] We note that the plaintiff has not alleged that any exception to governmental immunity, such as the identifiable person-imminent harm exception, applies here, and that this case concerns only whether Strand had a ministerial duty to tow. See *Edgerton* v. *Clinton*, 311 Conn. 217, 230, 86 A.3d 437 (2014) (recognizing exception to discretionary act immunity that allows for liability when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm" [internal quotation marks omitted]). In the operative complaint, the plaintiff alleged that Strand failed to tow Trnka's truck as mandated by the tow rules, which created a ministerial duty to tow such that Strand was left with no discretion in the matter. If the plaintiff had pleaded that Strand failed to arrest Trnka during the course of the possible domestic violence investigation, the defendant would have been protected by governmental immunity, as the failure to arrest would have been a discretionary act and the identifiable person-imminent harm exception would not have applied. See *Shore* v. *Stonington*, 187 Conn. 147, 153–54, 444 A.2d 1379 (1982) (although legally intoxicated driver was not arrested by police officer, plaintiff lacked cause of action in negligence against officer and town for failure to enforce motor vehicle laws governing reckless driving and driving while under influence because there was no identifiable person likely subject to imminent harm).

[15] "There is also authority for the proposition that where the duty of the public official to act is not ministerial but instead involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal." *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982). As the plaintiff based his case on a breach of a clear ministerial duty, we limit our discussion to such.

[16] We also briefly address the plaintiff's argument that the "[t]estimony of a municipal official . . . may provide an evidentiary basis from which a jury could find the existence of a specific duty or administrative directive"; *Wisiewski* v. *Darien*, supra, 135 Conn. App. 374; and that the jury reasonably relied on certain testimony at trial to conclude that the tow rules imposed a ministerial duty on police officers to tow a particular vehicle. Specifically, the plaintiff relies on the testimony of Sergeant Paul Liquori of the East Haven Police Department, the author of the tow rules, who testified that paragraph 7 of the tow rules made no reference to officer discretion. Liquori also testified that whether the officer has discretion or not is "not in [paragraph] 7," but that "discretion prevails," and that he "probably could have written it better." The plaintiff parses Liquori's testimony when he argues that Liquori stated that "the provision did not contain any reference to officer discretion." Also unavailing is the plaintiff's reliance on the testimony of Lieutenant David Emerman, "the police department's person most knowledgeable about the rules and procedures relating to a variety of police policies." Although Emerman testified that he would not "let uninsured or unregistered drivers drive off," he also stated that officers were "allowed to let people . . . park vehicles. For example, if they had just pulled into their driveway and the motor vehicle stop was conducted on police station or other private property where the vehicle was off the roadway . . . then officers could use discretion in towing that vehicle." The plaintiff does not

reference the latter testimony in his brief to this court. Neither of the witnesses' testimony provides a foundation for the plaintiff's conclusion that, pursuant to the tow rules, "police had [an] obligation to tow vehicle[s] that [are] unregistered and/or [have] misused plates." In fact, Liquori responded that the rules "were never intended for" individual police officers, and the plaintiff's expert, Peter Fearon, agreed that the tow rules were "clearly directed toward towing companies." None of the plaintiff's witnesses testified that the tow rules imposed a ministerial obligation on East Haven police officers to tow.

[17] The plaintiff argues that the proper standard of review is abuse of discretion. As previously noted, however, we interpret the defendant's claim on appeal as a challenge to the interpretation of the tow rules, and abuse of discretion is not the standard of review applicable to such claims. See *Kelly* v. *New Haven*, supra, 275 Conn. 607.

[18] Because we conclude that the rule at issue is not ambiguous, we do not conduct a public policy analysis here, as there is no need to turn to extratextual evidence to assist in our interpretation. But see *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 137, 848 A.2d 451 (2004) (public policy underlying statutory scheme consistent with statutory interpretation analysis conclusion that statute was unambiguous). Even if it were necessary for us to interpret the tow rules in light of public policy, however, those considerations strongly militate against the plaintiff's assertion that the interpretation of the tow rules was properly left to the jury. A police officer's discretionary decisions should not be subject to challenge by a jury with the benefit of hindsight, and allowing a jury to decide on a case-by-case basis whether a policy imputes a ministerial duty would lead to inconsistent results. Here, that was precisely what the trial court permitted when it allowed the jury to determine the issue of whether the tow rules imposed a ministerial duty on police to tow. The plaintiff also argues that public policy is served by interpreting the tow rules as creating a clear ministerial duty to tow since requiring such a rule promotes the safe operation of vehicles on the roads. The plaintiff claims that general public safety considerations require the towing of motor vehicles that are unregistered or have misused plates, and makes the novel argument that the operation of a noncompliant vehicle is somehow more dangerous than a compliant vehicle, which can "resume a safe and lawful operation." We are not persuaded. This argument defies logic, as both noncompliant and compliant vehicles are equally likely to endanger public safety. Strand stopped the vehicle on the basis of a domestic violence investigation and, thus, was not investigating whether the driver or owner of the motor vehicle was in full compliance with motor vehicle laws. Paramount to an officer's discretion is the ability to determine how to pursue an investigation, and we will not undermine that discretion by second-guessing Strand's assessment here. Public policy considerations would not justify reading the tow rules to impose on police officers a clear ministerial obligation to tow. Our courts have long recognized that it is essential to allow police officers to "exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits . . . ." (Internal quotation marks omitted.) *Doe* v. *Peterson*, 279 Conn. 607, 615, 903 A.2d 191 (2006); see also *Coley* v. *Hartford*, supra, 312 Conn. 172.

[19] The plaintiff argues that Strand violated this provision when he "[f]aile[d] to tow the Chevy truck bearing a license plate registered to a 1989 Ford."

[20] See also *Coley* v. *Hartford*, supra, 312 Conn. 169 ("[t]he mere fact that a statute uses the word shall in prescribing the function of a government entity or officer should not be assumed to render the function necessarily obligatory in the sense of removing the discretionary nature of the function" [internal quotation marks omitted]); *Mills* v. *Solution, LLC*, supra, 138 Conn. App. 51 ("[w]e disagree with the plaintiff that the word 'shall' is sufficient to convert what is otherwise a discretionary act into a ministerial duty where the text of the statute leaves to the discretion of the police official how to perform the function and whether to perform the function at all").

[21] For example, paragraph 4 of the tow rules mandates that all "tow companies will tow police vehicles on a rotation basis with no charge to the Town of East Haven"; paragraph 12 mandates that tow companies "agree that local residents will only be charged a $70.00 fee for towing"; and paragraph 16 requires that "the tow company shall be responsible for the preservation, condition, and safety of all vehicles towed and its contents therein."

[22] A violation under Connecticut law is any offense for which the only sentence authorized is a fine and which is not expressly deemed an infrac-

tion. General Statutes § 53a-27.

[23] See General Statutes § 14-301.

[24] See General Statutes § 14-302.

[25] The plaintiff makes the unavailing counterargument that paragraph 7 of the tow rules mandates only that the motor vehicle violations for which a vehicle must be towed include "unregistered and misuse of plates," and that to consider any other violation is "not before the court." We disagree, as paragraph 7 states plainly that "[a]ll motor vehicle violations are to be towed *to include* unregistered and misuse of plates." (Emphasis added.) Unregistered vehicles and those with misused plates are a subset of "all" motor vehicle violations that paragraph 7 contemplates.

[26] None of the state motor vehicle statutes that Trnka eventually was charged with violating required that his vehicle be towed. See General Statutes §§ 14-224, 14-236, 14-147, 14-12a, and 14-213b. A review of the Connecticut statutes regarding motor vehicles reflects that officer discretion is to be preserved, under most circumstances, in determining whether to tow or impound a vehicle. See, e.g., General Statutes § 14-12h (if police officer sees motor vehicle, either parked or operated on public highway, with suspended license plate displayed, he "*may* seize and impound the vehicle" [emphasis added]). There are few statutes in the title fourteen of the General Statutes pertaining to motor vehicles that use mandatory language, and none apply here.

[27] In its memorandum of decision, the trial court cited only the fact that the tow rules were "issued by Chief of Police Leonard Gallo . . . and therefore known to [the East Haven Police Department]" to support its conclusion that the rules are binding on police officers. Simply because police officers may be aware of a set of rules not intended for them does not make those rules binding and eliminate police officer discretion.

[28] Fearon also agreed with the statement at trial that "what Chief Gallo and Sergeant Liquori are saying in paragraph 6 is a reminder to the tow truck operators and companies that it's the discretion of the individual police officers that will prevail regarding what vehicles are to be towed and under what circumstances . . . ."

[29] Liquori testified that tow truck operators were arriving simultaneously at calls, fighting, and causing damage to towed vehicles prior to the implementation of the tow rules.