******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## BENJAMIN WASHBURNE ET AL. *v.* TOWN OF MADISON ET AL.
### (AC 38721)

Alvord, Sheldon and Prescott, Js.

*Syllabus*

The plaintiff W, individually and on behalf of her minor son, B, who had sustained a broken leg when he was kicked in the shin area by another student while playing soccer in a third grade physical education class, sought to recover damages for negligence from the defendants, the town of Madison, the town's Board of Education, the principal of the elementary school where B was injured, and D, a substitute physical education teacher who was supervising B's class at the time of his injury. W alleged that B was not wearing shin guards at the time he was injured and that the defendants did not provide B or other children with shin guards, which she alleged violated existing school policies and resulted in B's injuries. The trial court granted the defendants' motion for summary judgment on the ground of governmental immunity and rendered judgment thereon, from which W appealed to this court. *Held*:

1. The trial court properly granted the defendants' motion for summary judgment, the court having determined that the acts or omissions underlying W's negligence claims were discretionary in nature and, thus, subject to governmental immunity; the defendants having presented evidence to demonstrate that the decision of whether to require shin guards involved the exercise of judgment and, thus, inherently was discretionary in nature, and W having failed to meet her burden of demonstrating the existence of a clear and unequivocal policy or other written directive mandating the use of shin guards by the town's third grade students, W failed to establish her claim that a genuine issue of material fact existed about whether safety guidelines in the board's physical education guide, specifically, a provision indicating that students should wear shin guards for additional protection, created a ministerial duty the implementation of which was not protected by governmental immunity, as she did not produce any regulation, rule or other directive promulgated by the town or the board that required all students to wear shin guards whenever playing soccer.

2. W could not prevail on her claim that, even if the defendants' acts or omissions were discretionary in nature, there remained a genuine issue of material fact as to whether B had been subject to imminent harm and, thus, fell within the identifiable person/imminent harm exception to governmental immunity; W presented no evidence that D or the other defendants were aware that an injury similar to the one suffered by B was so likely to happen that they should have acted to prevent it by requiring the students to wear shin guards, nor did W present any evidence to dispute certain of the board's interrogatory answers, which demonstrated that the probability of soccer related injuries in gym class was very low, or to show that the number of injuries was low because students usually wore shin guards when playing soccer, and although W presented evidence that it was apparent to the defendants that an injury to a child playing soccer without shin guards could occur, the foreseeability of such an injury did not translate to imminent harm without a showing that the probability that the injury would occur from the lack of shin guards was high enough to necessitate that the defendants act to prevent it.

Argued March 9—officially released August 15, 2017

*Procedural History*

Action to recover damages for the defendants' alleged negligence, brought to the Superior Court in the judicial district of New Haven, where the court, *Nazzaro, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon; thereafter, the court

denied the plaintiffs' motion to reargue, and the plaintiffs appealed to this court. *Affirmed.*

*Hugh D. Hughes*, with whom, on the brief, were *Brian Flood* and *Alexander Bates*, for the appellants (plaintiffs).

*Matthew Dallas Gordon*, with whom, on the brief, was *Nicholas Norton Ouellette*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. The plaintiff, Jennifer Washburne, who brought the underlying action on behalf of her minor son, the plaintiff Benjamin Washburne (Benjamin), and herself individually,[1] appeals from the summary judgment rendered by the trial court in favor of the defendants—the town of Madison (town); the town's Board of Education (board); Kelly Spooner, the principal of Ryerson Elementary School (Ryerson Elementary); and Erik Delehanty, a substitute physical education teacher—on the ground that the action was barred by governmental immunity.[2] According to the complaint, Benjamin's leg was broken when he was kicked in the shin or ankle by another student while playing soccer at school. The incident occurred during a physical education class at Ryerson Elementary that Delehanty was supervising. The defendants did not provide Benjamin or the other children with shin guards, and Benjamin was not wearing shin guards at the time he was injured, which the plaintiff alleged violated existing school policies and resulted in Benjamin's injuries.

The plaintiff claims on appeal that the court improperly rendered summary judgment as a matter of law despite the existence of genuine issues of material fact regarding (1) whether safety guidelines in a curriculum guide, which provided that students playing soccer should "wear shin guards for additional protection," imposed a ministerial duty on the defendants to require the use of shin guards by students, and (2) whether, even if such a duty was discretionary, Benjamin had been subject to imminent harm and, thus, an exception to governmental immunity was applicable. We disagree and, accordingly, affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. On March 16, 2010, Benjamin was a third grade student at Ryerson Elementary. On that day, as part of an organized activity during a gym class supervised by Delehanty, Benjamin and his classmates were permitted to play soccer on the school's athletic field. Before allowing them to play, Delehanty instructed the children about safety and the rules of the game, but he did not require the children to wear shin guards. Several minutes into the scrimmage, Benjamin was kicked in the shin or ankle by another student, which resulted in a fracture to Benjamin's lower left tibia and fibula.

The plaintiff commenced this action against the defendants on February 3, 2012. The complaint contained eight counts, each sounding in negligence. Count one invoked General Statutes § 52-557n and claimed that Benjamin's injuries were the result of negligence by the town. The next three counts of the complaint,

which also were brought on behalf of Benjamin, alleged negligence on the part of Spooner, Delehanty, and the board, respectively. The remaining four counts, one against each of the defendants, were brought by the plaintiff in her individual capacity to recover funds spent caring for Benjamin's injuries and on his recovery. The gravamen of the plaintiff's negligence claims was that rules, policies, or procedures of the school district required students to wear shin guards when playing soccer, but no shin guards were provided to Benjamin on the day he was injured.[3]

The defendants filed an answer to the complaint on November 20, 2012, denying the negligence allegations. They also asserted by way of a special defense that the town and its agents were immune from liability for any alleged negligence on the basis of governmental immunity, citing § 52-557n (a) (2) (B). The plaintiff filed a reply denying all allegations of the special defense.

On August 1, 2014, the defendants filed a motion for summary judgment. The defendants claimed that they were entitled to judgment on all counts of the complaint as a matter of law because of the discretionary act immunity afforded by § 52-557n (a) (2) (B), and because the plaintiff could not show that Benjamin was an identifiable person subject to imminent harm, as required to fall within the relevant exception to governmental immunity. In support of the motion for summary judgment, the defendants submitted a memorandum of law attached to which were excerpts from copies of the depositions of Spooner and Delehanty.

The plaintiff filed an opposition to the motion for summary judgment on March 19, 2015. According to the plaintiff, there were genuine issues of material fact that should be resolved by the jury concerning whether the defendants had a ministerial duty, as set forth in a school policy or directive, to ensure that students wore shin guards when playing soccer at school. The plaintiff further argued that, even if the decision to require shin guards was discretionary in nature, there remained a genuine issue of material fact as to whether Benjamin was an identifiable person subject to imminent harm, and, thus, whether an exception to governmental immunity applied. Attached as exhibits to the opposition were portions of the town's responses to interrogatories; a chart from a curriculum guide titled "Madison Public Schools Physical Education Program: A Framework for Integrated Teaching and Learning" (physical education guide); portions of Madison Public Schools' "Student Welfare/Safety Requirements"; and additional excerpts from Spooner's and Delehanty's depositions.

The defendants filed a reply memorandum in support of summary judgment and in response to the plaintiff's opposition on July 1, 2015. Attached to the reply was an affidavit by James Flanagan, a physical education teacher and physical education coordinator for the

board who was responsible for the drafting of the physical education guide; additional excerpts from the physical education guide; and a copy of Benjamin's "Medical Release From Elementary Physical Education," which indicated that, despite a physical issue regarding his foot, he could participate in most regular physical education activities, including playing soccer. The only restricted activity noted was participation in the mile run.

The plaintiff filed a response to the reply memorandum on July 31, 2015, attached to which were excerpts from a publication titled "Madison Public Schools Department of Athletics 2009–2013 Handbook for Student-Athletes, Parents and Coaches"; excerpts from Flanagan's deposition testimony; and another copy of Flanagan's affidavit. That same day the defendants filed a short surreply. The court, *Nazzaro, J.*, heard argument on the motion for summary judgment at a hearing on August 3, 2015.

On November 5, 2015, the court issued a memorandum of decision rendering judgment on all counts of the complaint in favor of the defendants. The court concluded on the basis of the pleadings and evidence submitted by the parties that the defendants were entitled to governmental immunity as a matter of law. Specifically, the court determined that the defendants had established their prima facie entitlement to summary judgment because the court's construction of relevant excerpts from the physical education guide and the averments of Flanagan established that the use of shin guards by students was not a mandatory requirement but, rather, involved a discretionary determination as to whether the extra protection afforded by shin guards was warranted under the circumstances. The court also determined that the evidence submitted by and relied upon by the plaintiff in opposition to the summary judgment motion failed to raise a genuine issue of material fact regarding whether the supervision of students playing soccer during a physical education class was a ministerial act or that any policy or procedure in place was intended to limit the discretion of the defendants or prescribe "how to instruct on and provide safety equipment for soccer played during physical education class."

The court also determined that the plaintiff had failed to establish that a genuine issue of material fact existed regarding the identifiable person/imminent harm exception to governmental immunity. In particular, the court stated that the plaintiff's arguments and evidence could not support a determination that the harm suffered was imminent. The court reasoned that although the plaintiff had established that a potential for injury may have been apparent to the defendants, she had failed "to present evidence to demonstrate that the probability of injury to students from not wearing shin guards in

gym class was so high that the defendants had a clear and unequivocal duty to act immediately to prevent harm, namely, to provide shin guards for students." The plaintiff filed a motion for reargument and reconsideration, which the court denied. This appeal followed.

Before turning to the plaintiff's claims on appeal, we begin by setting forth the standard of review applicable to a trial court's decision to grant a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 221–22, 131 A.3d 771 (2016).

I

The plaintiff first claims that the court improperly rendered summary judgment as a matter of law because a genuine issue of material fact existed about whether safety guidelines in the board's physical education guide, specifically, a provision indicating that students should "wear shin guards for additional protection," created a ministerial duty, the implementation of which was not protected by governmental immunity. We are not persuaded.

The following additional facts are relevant to this claim. In opposing summary judgment, the plaintiff argued that the defendants had a ministerial duty to ensure that all children wore shin guards when playing soccer during physical education classes. In support of that argument, the plaintiff cited to the physical education guide, which included a section titled "Safety Guidelines." That section was in chart format, broken down by sport. Under each sport heading, there were five columns with the following subheadings: "equip-

ment," "clothing/footwear," "facilities," "special rules/instruction," and "supervision." For soccer, the following bullet points were listed under the subheading of clothing/footwear: "no metal or molded cleats"; "wear suitable footwear and clothing"; "wear shin guards for additional protection"; "wear sun protection"; and "no jewelry."

In Flanagan's affidavit, he averred that the use of shin guards was, as indicated in the safety guidelines, only for additional or extra protection, and was meant only as a suggestion to be exercised at the discretion of the individual teacher, not as an absolute requirement. Flanagan also explained that one of the reasons that shin guards were not mandatory equipment was because cleats were prohibited in gym class. He further indicated that there were no notes, records, or other information on file that would have alerted Delehanty that Benjamin needed the additional protection of shin guards. The plaintiff submitted no counteraffidavit or evidence, other than the physical education guide, to directly contradict Flanagan's explanation of the guide.

We next set forth the well settled law in this state regarding the liability of municipalities and municipal agents. Although, at common law, a municipality generally was immune from liability for any tortious acts, our Supreme Court has long recognized that "governmental immunity may be abrogated by statute." *Williams* v. *New Haven*, 243 Conn. 763, 766, 707 A.2d 1251 (1998), citing *Wysocki* v. *Derby*, 140 Conn. 173, 175, 98 A.2d 659 (1953). General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." "This language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents." *Spears* v. *Garcia*, 263 Conn. 22, 29, 818 A.2d 37 (2003).

Subdivision (2) of § 52-557n (a), however, contains two significant limitations to the statutory abrogation of governmental immunity. The exception at issue in the present appeal provides as follows: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." General Statutes § 52-557n (a) (2) (B). The statutory scheme of § 52-557n, accordingly, distinguishes between discretionary and ministerial acts, "with liability generally attaching to a

municipality only for negligently performed ministerial acts, not for negligently performed discretionary acts. . . .

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . In order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner." (Citation omitted; internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 224.

It is important to emphasize that "[e]xceptions to governmental immunity will be found only if there is a duty to act that is *so clear and unequivocal* that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Emphasis added; internal quotation marks omitted.) *Ventura* v. *East Haven*, 170 Conn. App. 388, 402, 154 A.3d 1020, cert. granted, 325 Conn. 905, 156 A.3d 537 (2017), citing *Bonington* v. *Westport*, 297 Conn. 297, 307, 999 A.2d 700 (2010). Thus, only "[i]f by statute or other rule of law the official's duty is *clearly* ministerial rather than discretionary" will a cause of action then lie for an individual injured as a result of an official's allegedly negligent performance. (Emphasis added.) *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982).

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases [in which that determination] is apparent from the complaint. . . . [W]hether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 224–25.

Furthermore, as this court explained in *Ventura* v. *East Haven*, supra, 170 Conn. App. 388, anytime a determination of whether official acts are ministerial or discretionary "turns on the interpretation of a municipal ordinance or policy," this raises a question of law that "is inappropriate for a jury to decide." Id., 403, citing, inter alia, *Honulik* v. *Greenwich*, 293 Conn. 698, 710, 980 A.2d 880 (2009) (noting principles of statutory construction govern interpretation of town policies), and *General Accident Ins. Co. of America* v. *Powers, Bolles,*

*Houlihan & Hartline, Inc.*, 38 Conn. App. 290, 296–97, 660 A.2d 369 (improper to instruct jury to decide question of law requiring statutory interpretation), cert. denied, 235 Conn. 904, 665 A.2d 901 (1995). The interpretation of policy language is, thus, properly decided by the court, subject to our plenary review. *Ventura* v. *East Haven*, supra, 403.

As indicated, we construe a municipally created rule, directive, or policy pursuant to the principles of statutory construction. "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 404–405.

Turning to the present case, we are unconvinced on the basis of our review of the evidence submitted in conjunction with the summary judgment proceedings that any language in the safety guidelines clearly imposed a ministerial duty on the defendants to provide Benjamin and the rest of his classmates with shin guards or to ensure that shin guards were worn whenever the children played soccer. The defendants presented evidence to demonstrate that the decision of whether to require shin guards involved the exercise of judgment and, thus, was inherently discretionary in nature, and the plaintiff simply provided no evidence in rebuttal that raised a genuine issue of material fact on that issue.

The plaintiff, in arguing that the defendants violated a ministerial duty, had the burden of demonstrating the existence of a clear and unequivocal policy or other written directive mandating the use of shin guards by the town's third grade students. In attempting to meet that burden, the plaintiff primarily relied upon language found in the soccer section of a chart taken from the board's physical education guide. Specifically, the plaintiff directs the court's attention to a single bullet point stating, "wear shin guards for additional protection."

That language by itself, however, is not the type of clear, directory language that courts have found to impose on schools or physical education teachers a ministerial duty "to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 224. For example, nowhere in the guide is it stated that gym teachers are "required to," "must," or "shall ensure" that all students wear shin guards whenever playing soccer. The plaintiff has not produced any regulation, rule, or other directive promulgated by the town or the board to that effect.

Significantly, the chart relied on by the plaintiff comes from a section of the physical education guide titled, "Materials and Resources," in a subsection titled "Physical Education Safety Guidelines." The words "Safety Guidelines" are also clearly printed on top of the chart. The inclusion of the safety guidelines in this chapter suggests that they were intended to be used by teachers as a "resource" or information, rather than as strict policy directives that they were obligated to adhere to without the exercise of discretion or independent judgment. In common parlance, a "guideline" is generally understood to reflect an informed suggestion or a best practice. Thus, the use of the term "guidelines," rather than "mandates" or "directives," implies that, except where accompanied by specific and clear directory language, the bullet points in the safety guideline charts were informative rather than mandatory in nature.

Certainly, taken out of context, the phrase "wear shin guards" might be construed, as a matter of grammar, as an imperative statement, arguably mandating the use of shin guards. In the present case, however, that phrase is followed by the modifier, "for additional protection," suggesting that some additional judgment or discretion needed to be exercised to determine whether such additional protection was needed before the phrase would become directive. Furthermore, the phrase is but one of several bullet points addressing clothing and footwear, and follows a more clearly directive notation, "no metal or molded cleats." Because cleats are expressly forbidden in gym classes, this logically renders the use of shin guards relatively less important as a safety concern and, in fact, renders more significant the latter, "for additional protection," language. Moreover, in the section of the chart dedicated to "special rules/instructions" for soccer, there is nothing requiring an instruction on the use of shin guards, which one would expect to find if the use of shin guards were, in fact, mandatory.

To the extent that the phrase "wear shin guards for additional protection" is ambiguous, and thus susceptible to different meanings, that fact alone supports a determination that the language in the physical educa-

tion guide was not intended to be a clear and unequivocal waiver of governmental immunity. That notion finds further support in Flanagan's affidavit, in which he describes the physical education guide as generally representing "an articulation of what students should know and be able to do and supports teachers in knowing how to achieve these goals." Flanagan's understanding comports with our own construction of the guide as simply a resource for information, and undermines the plaintiff's position that the safety guidelines in the guide were intended as mandates that the defendants were obligated to adhere to without the exercise of discretion.

In short, the sole evidence before us regarding the intent of the drafters of the physical education guide and the language in question indicates that it was simply intended to provide information that shin guards *could* be worn for additional protection. As we have already concluded, whether extra protection was needed and whether to utilize shin guards in any given situation required the exercise of judgment and, in the present case, fell within the discretion exercised by the defendants.

We are unconvinced that the trial court improperly determined that the acts or omissions underlying the plaintiff's negligence claims were discretionary in nature and, thus, subject to governmental immunity. Accordingly, we reject the plaintiff's claim.

## II

We next turn to the plaintiff's alternative claim that, even if the defendants' acts or omissions were discretionary in nature, the court improperly granted the defendants' motion for summary judgment because there remained a genuine issue of material fact as to whether Benjamin had been subject to imminent harm and, thus, fell within the identifiable person/imminent harm exception to governmental immunity.[4] We disagree.

"The imminent harm exception to discretionary act immunity [for municipalities and their employees] applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable [person]; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that [person] to that harm. . . . [Our Supreme Court has] stated previously that this exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. . . . [T]he ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court . . . [unless] there

are unresolved factual issues material to the applicability of the defense . . . [in which case] resolution of those factual issues is properly left to the jury." (Internal quotation marks omitted.) *Strycharz* v. *Cady*, 323 Conn. 548, 573–74, 148 A.3d 1011 (2016).

In *Haynes* v. *Middletown*, 314 Conn. 303, 101 A.3d 249 (2014), our Supreme Court reexamined and clarified our jurisprudence with respect to the principle of imminent harm. The court overruled in part its prior holding in *Burns* v. *Board of Education*, 228 Conn. 640, 650, 638 A.2d 1 (1994), to the extent that it appeared to narrow the definition of imminent harm to harms arising from dangerous conditions that were temporary in nature. *Haynes* v. *Middletown*, supra, 322–23. Instead, it reemphasized its earlier interpretation of imminent harm as stated in its decision in *Evon* v. *Andrews*, 211 Conn. 501, 559 A.2d 1131 (1989), in which it explained that a harm is not imminent if it "could have occurred at any future time or not at all"; id., 508; and clarified that it "was not focused on the duration of the alleged dangerous condition, but on the magnitude of the risk that the condition created." (Emphasis omitted.) *Haynes* v. *Middletown*, supra, 322. "[W]hen the court in *Haynes* spoke of the magnitude of the risk . . . it specifically associated it with the *probability* that harm would occur, not the foreseeability of the harm." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Williams* v. *Housing Authority*, 159 Conn. App. 679, 704–705, 124 A.3d 537, cert. granted on other grounds, 319 Conn. 947, 125 A.3d 528 (2015). In sum, the Supreme Court concluded that "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." *Haynes* v. *Middletown*, supra, 322–23.

In *Williams* v. *Housing Authority*, supra, 159 Conn. App. 679, this court construed *Haynes* as setting forth the following four part test with respect to imminent harm. "First, the dangerous condition alleged by the plaintiff must be 'apparent to the municipal defendant.' . . . We interpret this to mean that the dangerous condition must not be latent or otherwise undiscoverable by a reasonably objective person in the position and with the knowledge of the defendant. Second, the alleged dangerous condition must be likely to have caused the harm suffered by the plaintiff. A dangerous condition that is unrelated to the cause of the harm is insufficient to satisfy the *Haynes* test. Third, the likelihood of the harm must be sufficient to place upon the municipal defendant a 'clear and unequivocal duty' . . . to alleviate the dangerous condition. The court in *Haynes* tied the duty to prevent the harm to the likelihood that the dangerous condition would cause harm. . . . Thus, we consider 'a clear and unequivocal duty'

. . . to be one that arises when the probability that harm will occur from the dangerous condition is high enough to necessitate that the defendant act to alleviate the defect. Finally, the probability that harm will occur must be so high as to require the defendant to act immediately to prevent the harm." (Citations omitted; emphasis omitted; footnote omitted.) Id., 705–706.

Applying the *Haynes* standard to the facts of the present case, the plaintiff's claim fails as a matter of law and, thus, was properly rejected by the trial court. The plaintiff presented no evidence that Delehanty or the defendants were aware that an injury similar to the one suffered by Benjamin was so likely to happen that they should have acted to prevent it by requiring the students to wear shin guards. The only real evidence presented at summary judgment regarding the magnitude of the risk of a student being injured while playing soccer in gym class was contained in the answers to interrogatories provided by the board. The board was asked to identify the number of times during the three year period prior to Benjamin's injury that "a student was injured while participating in a Madison public school gym class." The response was that twenty-eight incidents had occurred. The next interrogatory asked the board to "identify the number of injuries which occurred during a soccer focused gym class." The answer was none. Thus, the probability of a soccer related injury was statistically very low. The plaintiff presented no evidence to dispute those responses or to show that the number of injuries was low because students usually wore shin guards when playing soccer.

Certainly, the plaintiff presented evidence that it was apparent to the defendants that an injury to a child playing soccer without shin guards could occur, as evidenced by Flanagan's and Delehanty's deposition testimony acknowledging the potential for such an injury. Foreseeability of an injury, however, does not translate to imminent harm without also showing that the probability that an injury will occur from the dangerous condition—here, the lack of shin guards—is high enough to necessitate that the defendants act to prevent it. Because we agree with the trial court that the plaintiff failed to present evidence demonstrating a genuine issue of material fact regarding the probability of injury to students from not wearing shin guards in third grade gym class, we reject the claim that the court improperly granted summary judgment in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For purposes of clarity and convenience, we refer in this opinion to Jennifer Washburne as the plaintiff, and Benjamin Washburne as Benjamin.

[2] Spooner and Delehanty were sued only in their official capacities.

[3] As stated in the court's memorandum of decision, the plaintiff alleged that Benjamin's injuries were the result of the following negligent and careless acts and omissions: "failure to establish rules or guidelines of supervision and protection of students participating in soccer during school hours;

failure to and/or inadequate supervision of students participating in soccer during school hours; failure to establish guidance on how to structure soccer to prevent injury; failure to adopt, instruct, or enforce rules to protect students and prevent injury to students in physical activities and physical education; failure to put in place the proper student to teacher ratio for physical education class and sufficient staff to supervise students; failure to properly train and screen substitute teachers, administrators, and staff to prevent harm to students; permitted substitute teachers without proper training to supervise students; and did not require or provide safety equipment for soccer." In addition, the plaintiff alleged that "the defendants knew or should have known that participation in soccer with[out] safety equipment subjected students to injury; permitting subordinates without proper training to supervise students posed a risk of harm; and safety procedures were needed and warranted." In opposing summary judgment, the plaintiff limited her argument that the alleged negligent acts or omissions of the defendants were ministerial in nature to those allegations related to the defendants' failure to follow existing rules requiring students to wear shin guards. Because that is also the sole issue briefed on appeal, we need not consider any unrelated specifications of negligence. See *Verderame* v. *Trinity Estates Development Corp.*, 92 Conn. App. 230, 232, 883 A.2d 1255 (2005) (claims not raised and adequately briefed on appeal deemed abandoned).

[4] We note that the defendants do not dispute that Benjamin was an "identifiable person" for purposes of the exception, conceding at oral argument on the motion for summary judgment that, as a schoolchild, "[h]e belongs, most likely, to the only set of identifiable persons for purposes of applying the exception that exists in Connecticut." For purposes of our analysis, we focus on the disputed issue of imminent harm.

----