******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MEGAN MARVIN *v.* BOARD OF EDUCATION
OF THE TOWN OF COLCHESTER
(AC 40951)

DiPentima, C. J., and Alvord and Conway, Js.

*Syllabus*

The plaintiff, through her mother and next friend, sought to recover damages
for negligence from the defendant, the Board of Education of the Town
of Colchester. The plaintiff, who was a high school student and played
on the school's varsity softball team, sustained injuries to her knee when
she slipped and fell on a puddle of water in the women's locker room
upon returning to the school from an away softball game. The plaintiff
alleged that the defendant, through its agents, failed to adequately
inspect and maintain the locker room floor and failed to warn the plaintiff
of the unsafe condition. The defendant filed a motion for summary
judgment on the ground that the plaintiff's negligence claim was barred
by government immunity pursuant to the statute (§ 52-557n [a] [2] [B])
that provides immunity for discretionary acts, but not ministerial acts,
of employees, agents and officers of political subdivisions of the state.
The trial court granted the defendant's motion for summary judgment
on the ground of government immunity and rendered judgment thereon.
On appeal to this court, the plaintiff claimed that the trial court improp-
erly render summary judgment in favor of the defendant because there
remained genuine issues of material fact with respect to her claim. *Held*:
1. The plaintiff could not prevail on her claim that a genuine issue of material
fact existed as to whether the inspection and maintenance of the locker
room floor by the defendant's employees constituted a ministerial func-
tion, the trial court having properly determined that such function was
discretionary in nature: although the plaintiff asserted that D, the softball
coach and physical education teacher at the school, who was in her
office adjoining the women's locker room at the time the plaintiff fell,
acknowledged in her deposition testimony that she was responsible for
the students' safety at the school and that she knew that she had to
pay attention to the locker room floor to ensure that it was safe, D's
testimony did not indicate that there was a rule, policy or directive that
required her to inspect and maintain the locker room floor, and in the
absence of any proof of a rule, policy or directive prescribing how D
was to inspect and maintain the locker room floor, it could not be
determined that she had a ministerial duty to check the floor; moreover,
contrary to the plaintiff's contention that the job description of the
defendant's custodians and a monthly building safety checklist are poli-
cies or directives that demonstrate that there is no discretion in how
the defendant's employees inspect and maintain the locker room floor,
the plaintiff failed to produce a policy, procedure or schedule within
the context of the job description that refers to inspecting and main-
taining the school's floors, and the job description and safety checklist
do not prescribe the manner in which the inspection and maintenance of
the school's floors, particularly the locker room floor, is to be carried out.
2. The plaintiff could not prevail on her claim that there remained a genuine
issue of material fact as to whether she was an identifiable person
subject to an imminent risk of harm and, thus, whether the identifiable
person, imminent harm exception to the defense of governmental immu-
nity applied, as she did not fall within an identifiable class of foreseeable
victims, nor was she an identifiable person for purposes of the exception:
this court declined the plaintiff's request to expand the narrow identifi-
able class of foreseeable victims to include not only schoolchildren
attending school during school hours, but also schoolchildren participat-
ing in varsity sports after school hours, and because the plaintiff was
not compelled to remain after school to play softball for the school or
to use the women's locker room after the game, as there is no legal
obligation to participate in any school sponsored extracurricular activi-
ties, she did not fall within an identifiable class of foreseeable victims,
nor was she an identifiable person; accordingly, the identifiable person,
imminent harm exception to governmental immunity was not applicable

to the present case.

Argued March 13—officially released July 9, 2019

*Procedural History*

Action to recover damages for, inter alia, the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Cole-Chu, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed*.

*James V. Sabatini*, for the appellant (plaintiff).

*Gary Kaisen*, for the appellee (defendant).

*Opinion*

CONWAY, J. The plaintiff, Megan Marvin, through her mother and next friend, Carole Marvin, appeals from the summary judgment rendered by the trial court in favor of the defendant, the Board of Education of the Town of Colchester, on the basis of governmental immunity. On appeal, the plaintiff claims that the court improperly rendered summary judgment because there remains a genuine issue of material fact with respect to (1) whether the defendant's inspection and maintenance of a locker room floor constitutes a ministerial duty for the purpose of governmental immunity, and (2) whether the plaintiff was an identifiable person subject to imminent harm, thus invoking the identifiable person, imminent harm exception to governmental immunity. We disagree and, accordingly, affirm the judgment of the trial court.

The record, viewed in the light most favorable to the nonmoving party, reveals the following facts and procedural history. The plaintiff was a student at Bacon Academy (school), the town of Colchester's public high school, where she played on the school's varsity softball team. On the evening of May 7, 2013, upon returning to the school from an away softball game, the plaintiff slipped and fell on a puddle of water in the women's locker room, causing her to sustain injuries to her left knee.

On April 29, 2015, the plaintiff commenced the present action against the defendant. The complaint alleged, inter alia,[1] one count of negligence against the defendant pursuant to General Statutes § 52-557n (a) (1) (A).[2] The crux of the plaintiff's negligence claim was that the defendant, through its agents, failed to adequately maintain and inspect the locker room floor and failed to warn the plaintiff of the unsafe condition.

The defendant filed an answer to the complaint on September 1, 2015, denying the negligence allegation and asserting as a special defense that the plaintiff's negligence claim was barred on the basis of governmental immunity pursuant to § 52-557n (a) (2) (B).[3]

On January 25, 2017, the defendant filed a motion for summary judgment on the ground that the plaintiff's claim was barred by governmental immunity. In her objection to the motion, the plaintiff argued that there remained a genuine issue of material fact as to whether the inspection and maintenance of the locker room floor constituted a ministerial duty for the purpose of governmental immunity or, in the alternative, whether the plaintiff was an identifiable victim within the purview of the identifiable person, imminent harm exception to governmental immunity.

In its memorandum of decision, the court concluded that the defendant had met its burden of establishing that no genuine issue of material fact existed as to both

grounds argued by the plaintiff, and, accordingly, it granted the defendant's motion for summary judgment on the basis of governmental immunity. This appeal followed. Additional facts will be set forth as necessary.

We begin our analysis by setting forth the standard of review applicable to an appeal from a trial court's ruling on a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . ." (Internal quotation marks omitted.) *DeMiceli* v. *Cheshire*, 162 Conn. App. 216, 221–22, 131 A.3d 771 (2016). "Once the moving party has met its burden [of production] . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . [I]t [is] incumbent [on] the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. . . . The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Citations omitted; internal quotation marks omitted.) *Ferrari* v. *Johnson & Johnson, Inc.*, 190 Conn. App. 152, 156–57,     A.3d     (2019). We next address the plaintiff's claims on appeal in turn.

I

The plaintiff's first claim is that the court improperly concluded that she had not established a genuine issue of material fact as to whether the inspection and maintenance of the locker room floor by the defendant's employees was ministerial in nature rather than discretionary. We disagree.

As a preliminary matter, we note that it is undisputed that the defendant is a political subdivision of the state that may raise the defense of governmental immunity pursuant to § 52-557n. "With respect to governmental immunity, under . . . § 52-557n, a [political subdivision] may be liable for the negligent act or omission of [its] officer[s] acting within the scope of [their] employment or official duties. . . . The determining factor is whether the act or omission was ministerial or discretionary. . . . [Section] 52-557n (a) (2) (B) . . . explic-

itly shields a [political subdivision] from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . . In contrast . . . officers [of a political subdivision] are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Perez* v. *Metropolitan District Commission*, 186 Conn. App. 466, 473–74, 200 A.3d 202 (2018). "[Our Supreme Court], on numerous occasions, has stated unequivocally that the determination of whether a governmental or ministerial duty exists gives rise to a question of law for resolution by the court." *Ventura* v. *East Haven*, 330 Conn. 613, 634, 199 A.3d 1 (2019). "[A]lthough the ultimate determination of whether governmental immunity applies is typically a question of law for the court, there may well be disputed factual issues material to the applicability of the defense, the resolution of which are properly left to the trier of fact." Id., 636 n.11.

"In order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling an employee of a political subdivision] to [act] in any prescribed manner." (Internal quotation marks omitted.) *Washburne* v. *Madison*, 175 Conn. App. 613, 623, 167 A.3d 1029 (2017), cert. denied, 330 Conn. 971, 200 A.3d 1151 (2019). "In general, the exercise of duties involving inspection, maintenance and repair of hazards are considered discretionary acts entitled to governmental immunity. . . . A [political subdivision] necessarily makes discretionary policy decisions with respect to the timing, frequency, method, and extent of inspections, maintenance and repairs." (Citations omitted; internal quotation marks omitted.) *Grignano* v. *Milford*, 106 Conn. App. 648, 656, 943 A.2d 507 (2008). With these legal principles in mind, we consider the plaintiff's claim.

In the present matter, the plaintiff makes several arguments in support of her claim that there remains a genuine issue of material fact as to whether the inspection and maintenance of the locker room floor constitutes a ministerial duty. First, the plaintiff argues that Anna DiPierro, the softball coach and physical education teacher at the school, who was in her office adjoining the women's locker room at the time the plaintiff fell, acknowledged in her deposition that she was responsible for the students' safety at the school and that she knew that she had to pay attention to the locker room floor to ensure that it was safe.[4] We disagree. Regardless of DiPierro's responsibility to keep her students safe, her testimony does not indicate that there was a rule, policy, or directive that required her to inspect and maintain the locker room floor. In fact,

when asked at her deposition whether it was her responsibility to look at the locker room floor to see if an unsafe condition existed, she answered that she took it upon herself to check the floors and that it was not necessarily a responsibility assigned to her. In the absence of any proof of a rule, policy, or directive prescribing how DiPierro was to inspect and maintain the locker room floor, it could not be said that she had a ministerial duty to check the locker room floor.

Second, the plaintiff argues that the job description of the defendant's custodians and a monthly building safety checklist are policies or directives that demonstrate that there is no discretion in how the defendant's employees inspect and maintain the locker room floor.[5] We disagree. The custodians' job description only provides generally that the custodial staff "[p]erforms necessary work to maintain the cleanliness and appearance of all hard surface flooring, including . . . mopping," and that the custodial staff is to maintain the cleanliness and sanitation of the building "by performing all work assignments in accordance with departmental policies, procedures and schedules . . . ." The plaintiff failed to produce a policy, procedure or schedule within the context of the job description that refers to inspecting and maintaining the school's floors. Further, Kendall Jackson, the director of educational operations for the Colchester public schools, testified at his deposition that he was not aware of any policies, procedures and schedules mentioned in the job description that had been put in writing. Jackson also testified that there was no specific policy, procedure, or directive that applied to the inspection and maintenance of the floors at the school, and that there existed only a general policy that the school should be maintained in a clean and safe condition.

As for the monthly building safety checklist, Raymond Watson, the head custodian at the school, testified at his deposition that the monthly building checklist does not specifically mention anything about floor safety.[6] Moreover, Jackson stated in an affidavit that "[t]he scheduling and the manner in which custodian[s] perform the tasks on the monthly maintenance checklist are left to the custodians' discretion."[7] In sum, the job description and monthly building safety checklist, according to Watson's and Jackson's deposition testimony, do not prescribe the manner in which the inspection and maintenance of the school's floors, particularly the locker room floor, is to be carried out and, therefore, do not create a genuine issue of material fact as to whether the inspection and maintenance of the floor is ministerial in nature.[8]

Finally, the plaintiff argues that her case is analogous to *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 610 A.2d 193 (1992), in which this court held that the removal of ice and snow from a school walkway was

a ministerial function. In *Kolaniak*, an adult education student was injured after she fell on an icy walkway at a high school. Id., 278. Prior to the winter season, the Bridgeport Board of Education issued a bulletin to maintenance personnel at the school stating that the walkways were to be inspected and kept clean on a daily basis. Id., 279. In the present case, the defendant did not issue a comparable bulletin or directive to its custodial staff specifically instructing them to inspect and clean the locker room floor on a daily basis. Rather, the defendant only generally instructed that the school should be maintained in a clean and safe condition. Accordingly, *Kolaniak* is materially distinguishable from the present case.

We conclude that the trial court properly determined that the inspection and maintenance of the locker room floor by the defendant's employees was discretionary in nature. Accordingly, we reject the plaintiff's claim that a genuine issue of material fact exists as to whether the inspection and maintenance of the locker room floor constituted a ministerial function.

## II

The plaintiff's second claim is that, even if the inspection and maintenance of the locker room floor constituted a discretionary rather than ministerial function, there remains a genuine issue of material fact as to whether she was an identifiable person subject to an imminent risk of harm and, thus, whether the identifiable person, imminent harm exception to the defense of governmental immunity applies. The plaintiff argues that she is both a member of a defined class of foreseeable victims as well as an identifiable individual. We disagree.

"The imminent harm exception to discretionary act immunity [for political subdivisions and their employees] applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable [person]; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that [person] to that harm . . . . [Our Supreme Court has] stated previously that this exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." (Internal quotation marks omitted.) *Washburne* v. *Madison*, supra, 175 Conn. App. 628–29.

"With respect to the identifiable victim element, we note that this exception applies not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. . . . [W]hether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn

exception to qualified immunity ultimately is a question of law for the courts, in that it is in effect a question of whether to impose a duty of care. . . . In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm. . . . The only identifiable class of foreseeable victims that we have recognized for these purposes is that of school children attending public schools during school hours." (Citation omitted; internal quotation marks omitted.) *Perez* v. *Metropolitan District Commission*, supra, 186 Conn. App. 479–80. Mindful of these legal principles, we address the plaintiff's arguments.

The plaintiff first argues that she falls within an identifiable class of foreseeable victims. In essence, the plaintiff asks us to expand the narrow identifiable class of foreseeable victims to include not only schoolchildren attending school during school hours, but also schoolchildren participating in varsity sports after school hours. We decline the invitation to make such an alteration to our jurisprudence.

In *Durrant* v. *Board of Education*, 284 Conn. 91, 108–109, 931 A.2d 859 (2007), our Supreme Court held that the plaintiff in that case, a mother who was picking up her child from an after school program when she slipped on a puddle of water on a staircase, did not fall within an identifiable class of foreseeable victims because she was not legally required to be present at the school. Important to the present case, the court also concluded that the *plaintiff's child* would likewise not fall within an identifiable class of foreseeable victims because he was not legally required to be at the school after school hours. Id., 104. The court further explained why schoolchildren attending school during school hours were within an identifiable class of foreseeable victims, but not the plaintiff or her child in that case. "In determining that such schoolchildren [attending school during school hours] were within such a class, we focused on the following facts: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials

during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions. . . . In the present case, the plaintiff was not compelled statutorily to relinquish protective custody of her child. No statute or legal doctrine required the plaintiff to enroll her child in the after school program; nor did any law require her to allow her child to remain after school on that particular day. Contrast General Statutes §§ 10-157 and 10-220 (school boards and superintendents required to maintain schools for benefit of students); General Statutes §§ 10-184 and 10-220 (children statutorily compelled to attend school and parents statutorily obligated to send them to school). The plaintiff's actions were entirely voluntary, and none of her voluntary choices imposes an additional duty of care on school authorities pursuant to the . . . standards [set forth in *Burns* v. *Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994)]." *Durrant* v. *Board of Education*, supra, 107–108.

Similarly, in the present case, the plaintiff was not legally obligated to remain after school nor were her parents compelled statutorily to relinquish protective custody of her. The plaintiff argues that, although participation in varsity athletics is voluntary, participation in games and practices once a student is a member of a school sports team is mandatory according to the defendant's policies.[9] Although the defendant may require players to attend games and practices as a condition to participation on a school athletic team, a student's participation on an athletic team remains, at all times, purely voluntary. See *Costa* v. *Board of Education*, 175 Conn. App. 402, 408–409, 167 A.3d 1152 (plaintiff injured playing basketball during voluntary school picnic not within foreseeable class of victims), cert. denied, 327 Conn. 961, 172 A.3d 801 (2017); *Jahn* v. *Board of Education*, 152 Conn. App. 652, 668, 99 A.3d 1230 (2014) (member of school swim team injured in warm-up drill not required to participate in swim meet or swim team). Unlike school attendance, there is no legal obligation to participate in any school sponsored extracurricular activities. See *Jahn* v. *Board of Education*, supra, 668. (plaintiff failed to argue that he was legally compelled to join swim team or to participate in warm-up drills). In accordance with our prior case law, we conclude that the plaintiff does not fall within an identifiable class of foreseeable victims.[10]

The plaintiff also argues that, even if she is not within an identifiable class of foreseeable victims, she is an identifiable individual subject to imminent harm. "Generally, we have held that a party is an identifiable person when he or she is compelled to be somewhere. See *Strycharz* v. *Cady*, [323 Conn. 548, 575–76, 148 A.3d 1011 (2016)] ('[o]ur decisions underscore . . . that whether the plaintiff was compelled to be at the location where the injury occurred remains a paramount consideration in determining whether the plaintiff was an iden-

tifiable person or member of a foreseeable class of victims' . . .) [abrogated on other grounds by *Ventura* v. *East Haven*, supra, 330 Conn. 636–37]. . . . Outside of the schoolchildren context, we have recognized an identifiable person under this exception in only one case that has since been limited to its facts.[11] Beyond that, although we have addressed claims that a plaintiff is an identifiable person or member of an identifiable class of foreseeable victims in a number of cases, we have not broadened our definition." (Footnote in original.) *St. Pierre* v. *Plainfield*, 326 Conn. 420, 436–37, 165 A.3d 148 (2017); see also *DeConti* v. *McGlone*, 88 Conn. App. 270, 274–75, 869 A.2d 271 (plaintiff injured when tree fell on car while driving not identifiable victim because no requirement for her to drive on portion of roadway where accident occurred), cert. denied, 273 Conn. 940, 875 A.2d 42 (2005).

In *St. Pierre* v. *Plainfield*, supra, 326 Conn. 423–25, the plaintiff, after participating in an aqua therapy session at a public pool, slipped on steps that were covered with water while he was on his way to the men's locker room. Our Supreme Court held that the plaintiff was not an identifiable person because he was not compelled to attend the aqua therapy session. Id., 438 ("[T]he plaintiff was in no way compelled to attend the aqua therapy sessions. . . . Under established case law, this choice precludes us from holding that the plaintiff was an identifiable person or a member of an identifiable class of persons."). As we previously discussed in this opinion, the plaintiff in the present case was not compelled to play softball for the school nor was she compelled to use the women's locker room after the game. On the basis of our prior case law, we conclude that the plaintiff was not an identifiable person nor was she within an identifiable class of foreseeable victims. Accordingly, because the identifiable victim, imminent harm exception to governmental immunity is not applicable in the present case, we reject the plaintiff's claim that the court improperly rendered summary judgment in favor of the defendant. Because the plaintiff does not qualify as an identifiable person, we need not address whether an imminent harm existed.[12] See id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The complaint also alleged public nuisance pursuant to General Statutes § 52-577n (a) (1) (C), but the plaintiff withdrew this claim before the court ruled on the defendant's motion for summary judgment. Accordingly, the plaintiff's claims on appeal relate only to the negligence count.

[2] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[3] General Statutes § 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[4] DiPierro testified at her deposition that she was unaware of any water on the locker room floor prior to the plaintiff's fall and that she cleaned up the water once the plaintiff told her that she slipped on a puddle.

[5] The plaintiff appended to her memorandum of law in opposition to the defendant's motion for summary judgment two job descriptions—one for a day custodian and one for a night custodian. Although the job descriptions vary slightly, they do not differ in any crucial respects for purposes of this appeal. For clarity, we refer to these documents solely as one job description.

[6] Watson also stated in his deposition that he never received anything in writing from the defendant detailing how to clean and maintain the floors at the school.

[7] We note that a copy of the building safety checklist was not before the trial court.

[8] We note that the plaintiff briefly mentions in her appellate brief that the defendant had written policies relating to "the kind of conduct or condition [the] plaintiff alleges caused the injury," but that the defendant has failed to produce these policies. Thus, she argues that a jury could draw an adverse inference against the defendant for failing to produce the written policies. The plaintiff makes only a conclusory statement and fails to cite to any legal authority. Accordingly, the plaintiff's claim is inadequately briefed. "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

[9] The plaintiff attached to her memorandum of law in opposition to the defendant's motion for summary judgment a copy of the school's student handbook, which stated that student athletes were required to attend all practices and games unless previously excused by the coach.

[10] The plaintiff also cites to *Strycharz* v. *Cady*, 323 Conn. 548, 578, 148 A.3d 1011 (2016), abrogated on other grounds by *Ventura* v. *East Haven*, supra, 330 Conn. 636–37, for the general proposition that the purpose of charging school officials with a duty of care is to ensure that schoolchildren are protected from imminent harm. At issue in *Strycharz* was whether a student who was injured after leaving school grounds *during school hours* remained a member of an identifiable class of foreseeable victims despite leaving school property. Id., 562. Because the present case involves an injury suffered on school property after school hours, *Strycharz* does not lend support to the plaintiff's argument.

[11] "Specifically, prior to the adoption of the current three-pronged identifiable person, imminent harm analysis, [our Supreme Court] concluded that an identifiable person subject to imminent harm existed among a group of intoxicated individuals who were arguing and scuffling in a parking lot when a police officer who spotted them failed to intervene until he heard a gunshot. *Sestito* v. *Groton*, 178 Conn. 520, 522–24, 423 A.2d 165 (1979). This holding, however, has been limited to its facts." *St. Pierre* v. *Plainfield*, 326 Conn. 420, 436 n.15, 165 A.3d 148 (2017).

[12] Likewise, we do not reach the argument in the plaintiff's brief that the trial court erred in finding no genuine issue of material fact as to whether the defendant had actual notice of the unsafe condition.